[S.F. No. 24397. July 15, 1982.]

MISSION IMPORTS, INC., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
MONTEREY BAY COMPANY, INC., Real Party in Interest.

922

**COUNSEL**

Alfred E. Augustini, George T. McDonnell, Thomas B. Walper and Allen, Matkins, Leck, Gamble & Mallory for Petitioner.

No appearance for Respondent.

Luther Kent Orton, David J. Brown, James M. Addams, Carol E. Reese, Brobeck, Phleger & Harrison, David Hardy and Susan L. Paulus for Real Party in Interest.

**OPINION**

**BIRD, C. J.**—In 1981 real party in interest filed a civil action against petitioner in San Francisco Superior Court. The questions presented here by petition for writ of mandate are whether petitioner may be required to defend this action in San Francisco County and, if so, whether petitioner's motion to change venue to Los Angeles County was brought in bad faith.

I.

Mission Imports, Inc. (Mission) is a California corporation engaged in the distribution of alcoholic beverages to wholesalers. Its principal place of business is in Los Angeles County. Monterey Bay Company, Inc. (Bay) is the exclusive national importer of St. Pauli Girl beer. Its principal place of business is in San Bernardino County.

In 1978, Bay appointed Mission to distribute St. Pauli Girl beer in California. Bay sent Mission a letter agreement which reads: "This will

confirm that we have appointed [Mission] the distributor of [St. Pauli Girl] for all counties in the State of California. [¶] This agreement may be terminated by either party thirty (30) days from receipt of written notice of termination." Mission formally accepted the letter agreement in Los Angeles on September 19, 1978.

By the spring of 1981, relations between Mission and Bay had begun to deteriorate. In June of that year, the parties became embroiled in a controversy over whether Bay could appoint and sell directly to other distributors in California. Relying upon an oral agreement which it claimed the parties had entered into in Los Angeles in August 1978, Mission asserted that it had the exclusive right to distribute St. Pauli Girl beer within the state.

The dispute continued and in October of 1981 Bay sent Mission a letter purporting to terminate their distribution agreement as of November 20th. Mission claimed the termination was invalid and threatened legal action. On November 11th, Mission's attorney, Alfred Augustini, sent a letter to various subdistributors of St. Pauli Girl beer, informing them of the purported termination and of Mission's intent to take legal action against Bay. After noting that Bay had advised the subdistributors to deal directly with it following the termination, the letter closed with this admonition. "Pending a court order determining the validity of the termination, it is Mission's position that it remains the master distributor for St. Pauli Girl in California. [¶] Please govern yourself accordingly."

Much to Mission's chagrin, Bay filed suit first. On November 13th, Bay sued Mission and Augustini in San Francisco Superior Court seeking declaratory and injunctive relief. Alleging that the letter agreement constituted the only agreement between the parties, Bay sought a declaration of its rights under the agreement. Specifically, Bay sought a declaration that it could appoint other distributors and that the termination was valid. Bay also sought to enjoin Mission and Augustini from interfering further with its current and prospective contractual relationships with other distributors.[1]

---

[1]Bay appended to its complaint a copy of the letter agreement, a copy of the letter purporting to terminate Mission, and a copy of a letter from Mission to Bay, dated January 2, 1980, in which Mission stated that "we understand it is your perogative to make any appointments [of other distributors that] you feel necessary . . . ."

Shortly thereafter, Augustini filed a motion on his own behalf to change venue from San Francisco to Los Angeles. That same day, Bay amended its complaint, and dropped Augustini as a party defendant but added an unfair competition claim and a claim for damages against Mission. On November 25th, Bay formally dismissed with prejudice its claims against Augustini. (See Code Civ. Proc., § 581, subd. 5.)[2] As a result, his motion for change of venue was denied on December 8th.

Meanwhile, on November 20th Mission had filed suit against Bay in Los Angeles Superior Court. ■ ■■■■ Because of the pendency of Augustini's venue motion in the San Francisco action, the Los Angeles court concluded that this action need not be abated immediately.[3] Accordingly, that court set a hearing for December 14th on Mission's request for a preliminary injunction prohibiting Bay from enforcing the termination or otherwise infringing upon Mission's alleged exclusive distributorship.

On December 10th, after Augustini's own venue motion had been denied and before the hearing in Los Angeles on the preliminary injunction, Augustini filed on Mission's behalf a second motion to change venue to Los Angeles. The pendency of this second venue motion caused the Los Angeles court again to conclude that the Los Angeles action need not be abated. Thereafter, the court proceeded to hear Mission's motion for preliminary injunction which was granted on December 16th.

On January 5, 1982, Mission's venue motion came on for hearing in San Francisco. Mission argued that neither the declaratory relief nor the tort claims were properly in San Francisco (see § 397, subd. 1) and moved for the transfer of the action to Los Angeles, the county of its principal place of business. (See § 395.5.) Asserting that Bay had filed

---

[2]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3]"[W]here two [courts] have concurrent jurisdiction over the same parties and subject matter, the tribunal which first acquires jurisdiction of the parties is entitled to retain it exclusively." (*Mungia* v. *Superior Court* (1964) 225 Cal.App.2d 280, 283 [37 Cal.Rptr. 285].) Ordinarily, the other court must abate its proceedings on demand. (*Ibid.*)

However, the timely filing of a motion to change venue on the ground that an action has been brought in the wrong court (§ 397, subd. 1) suspends a court's jurisdiction to take any action in the case other than hearing and deciding the venue motion. (See generally, 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 524, at pp. 1344-1345.) It was apparently for this reason that the Los Angeles court determined that it need not abate its proceedings immediately.

suit in San Francisco in bad faith and for the sole purpose of harassment, Mission asked for an award of costs and attorney fees incurred in bringing the motion. (See § 396b.)

Bay defended, arguing that under well-established principles of law, venue was proper in San Francisco on all the causes of action. It counterclaimed for an award of costs and attorney fees incurred in resisting the motion.

The trial court denied Mission's venue motion, found the motion to have been made in bad faith, and awarded costs and attorney fees of $350 to Bay. This mandate proceeding ensued.[4] An alternative writ was issued staying further proceedings in the San Francisco action. The order of abatement entered in the Los Angeles action on January 22, 1982, was stayed as well. The preliminary injunction issued by the Los Angeles Superior Court is still in effect.[5]

## II.

The first issue to be decided is whether San Francisco is a proper place for trial of Bay's action. In its complaint, Bay states several transitory tort and contract causes of action against Mission. The suit is a "transitory-mixed action." (See generally, 6 Grossman & Van Alstyne, Cal. Practice (1981) § 365, p. 390.)

Venue of transitory actions against corporations is governed by section 395.5.[6] That section provides, "A corporation or association may

---

[4]Mandate is the proper method of obtaining review of an order granting or denying a motion for change of venue. (§ 400.)

[5]Preliminarily, it should be noted that Mission has moved to strike certain portions of Bay's answer to the petition for writ of mandate. Mission also seeks to have all references in Bay's memorandum of points and authorities to the challenged items struck as well.

The challenged portions of the answer set forth facts bearing on (1) the relative sophistication of the parties; (2) the question whether the parties did in fact enter into a separate oral contract appointing Mission the exclusive distributor of St. Pauli Girl beer in California as Mission claims; and (3) the question whether Bay filed suit in San Francisco in good faith.

Since the propriety of the trial court's ruling must be judged solely on the basis of the record before that court (*Sequoia Pine Mills* v. *Superior Court* (1968) 258 Cal. App.2d 65, 69 [65 Cal.Rptr. 353]), and the challenged items were not brought to the attention of that court, the motion to strike is granted.

[6]These venue rules were transferred without change from article XII, section 16 of the California Constitution to the Code of Civil Procedure in 1972. (See generally, 6 Grossman & Van Alstyne, *supra*, §§ 291-292, pp. 306-311.)

be sued in the county [1] where the contract is made or [2] is to be performed, or [3] where the obligation or liability arises, or [4] the breach occurs; or [5] in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases [see § 397]." Although the section appears to be addressing actions sounding in contract, it has long been settled that it governs actions sounding in tort as well. (*Lewis* v. *S.P.C.R.R. Co.* (1884) 66 Cal. 209, 210 [5 P.79]; *Shida* v. *Japan Food Corp.* (1960) 185 Cal.App.2d 443, 447 [8 Cal.Rptr. 271].)

The purpose of the section is to permit a wider choice of venue in suits against a corporation than is permitted in suits against an individual defendant. (*Hale* v. *Bohannon* (1952) 38 Cal.2d 458, 469 [241 P.2d 4].) If venue in a county other than the corporation's principal place of business (i.e., "residence") is proper, the corporation has no standing to move for a transfer to its principal place of business. (*Id.,* at p. 478; *Shida* v. *Japan Food Corp., supra,* 185 Cal.App.2d at p. 448.) "Moreover, in the absence of an affirmative showing to the contrary, the presumption is that the county in which the title of the action shows that it is brought is, prima facie, the proper county for the commencement and trial of the action. [Citations.]" (*Smith* v. *Stanford Research Institute* (1963) 212 Cal.App.2d 750, 753 [28 Cal.Rptr. 481]; *Shida* v. *Japan Food Corp., supra,* at p. 447.)

 It is undisputed that Bay's complaint alleges a cause of action against Mission in tort for wrongfully interfering with Bay's contractual relationships and for unfair competition. The complaint avers that Mission accomplished these torts by circulating the November 11th letter to current and prospective California distributors of St. Pauli Girl beer. That letter advised distributors that Bay's termination of Mission was invalid, that Mission remained the exclusive distributor of St. Pauli Girl beer, and that the distributors should govern themselves accordingly. Bay alleges that by this admonishment Mission intimated that it would take legal action against distributors who purchased St. Pauli Girl beer from Bay. Finally, Bay alleges that Mission circulated the letter with the intent to cause these distributors to sever or refrain from entering into contracts with Bay and/or to refrain from purchasing St. Pauli Girl beer directly from Bay.

Section 395.5 permits tort claims against a corporation to be tried in any county in which the "liability arises" as well as in the county where

the corporation's principal place of business is located. (See generally, 6 Grossman & Van Alstyne, *supra*, § 296, pp. 318-321.) Since the County of San Francisco, where Bay's complaint was filed, is presumptively the proper county for a trial of the action, the burden of proving otherwise rests with Mission. To prevail on its motion for a change of venue, Mission must demonstrate not only that its principal place of business is not in San Francisco—a fact conceded by Bay—but also that the alleged liability did not arise in San Francisco. (*Shida* v. *Japan Food Corp., supra*, 185 Cal.App.2d 443, 447-448; *Shores* v. *Chip Steak Co.* (*Shores II*) (1955) 130 Cal.App.2d 627, 629 [279 P.2d 591].) In tort, "liability arises where the injury occurs . . . ." (*Tingley* v. *Times-Mirror Co.* (1904) 144 Cal. 205, 206 [77 P. 918].)

Here, it was established without dispute in the trial court that Mission sent the November 11th letter to three specific distributors: Consumer Distributing Co. (Consumer), in San Francisco; Anchor Distributing Co. (Anchor), in Marin; and L.B. Henry Co., in Contra Costa.[7] Bay contends that the fact that the letter was sent to Consumer in San Francisco—i.e., that the allegedly wrongful act occurred there—establishes that San Francisco is among the counties in which Mission's "liability arises" for purposes of venue. Mission, however, contends that the Ferrigno declaration conclusively establishes that Bay suffered no actual harm in San Francisco. Therefore, Mission insists that its liability for the alleged torts cannot be said to have arisen in that county.

The Ferrigno declaration reads as follows: "I was not intimidated in any way by the [November 11th] Letter . . . and neither the [November 11th] Letter nor any other action of Mission has adversely affected my willingness to distribute St. Pauli Girl Beer." Bay's complaint, of course, alleges that it was damaged by the letter. However, Bay neither specifically alleged nor established by affidavit that the circulation of

---

[7]Mission established that Consumer received the letter through the declaration of Consumer's owner, Tony Ferrigno (the Ferrigno declaration).

Bay alleged in its complaint, which was verified on information and belief by a corporate officer, that the letter was received by Anchor, an existing California distributor of St. Pauli Girl beer, and by L.B. Henry, a prospective distributor. Mission did not challenge these allegations. While a complaint verified on information and belief by an officer of a corporation is not to be considered an affidavit (§ 446), it may be considered for its factual content in ruling on a motion for change of venue to the extent that it is not controverted by the affidavits of the moving party. (*General Steel & Wire Co.* v. *Stryco Mfg. Co.* (1963) 213 Cal.App.2d 495, 497 [28 Cal.Rptr. 769]; *Quick* v. *Corsaro* (1960) 180 Cal.App.2d 831, 835-836 [4 Cal.Rptr. 674].)

the letter in San Francisco County caused it harm in that county. (Compare *Shores* v. *Chip Steak Co.* (*Shores II*), *supra*, 130 Cal.App. 2d 627, 629 [in an action for unfair competition, venue in Los Angeles was found proper because the uncontroverted allegations of the complaint established that Los Angeles was the county where the alleged wrongful acts occurred and produced harm].)

Bay did allege that the November 11th letter was received by Anchor, an existing California distributor of St. Pauli Girl beer. (See *infra*, fn. 8.) Mission itself offered evidence that Anchor distributed St. Pauli Girl beer in San Francisco.[8] Taken together, Bay's allegations and Mission's evidence establish that Bay may have suffered injury (e.g., lost sales) in San Francisco. Mission, therefore, has not met its burden of showing that such injury did not occur in San Francisco. Accordingly, venue of the tort claims is proper as laid. (See, e.g., *Shida* v. *Japan Food Corp.*, *supra*, 185 Cal.App.2d 443, 448-449.)

■ Bay's declaratory relief claim is also properly in San Francisco. With one modification, venue for declaratory relief actions is determined by reference to the nature of the subject matter of the action. Thus, "an action seeking declaratory relief with respect to the obligations of a contract is treated venue-wise like other contract actions." (6 Grossman & Van Alstyne, *supra*, § 264, at p. 292, fn. omitted.) "The modification arises where the complaint seeks declaratory exoneration from an alleged liability shown to be asserted by the defendant." (*Ibid.*) In such circumstances, venue is determined with reference to the subject matter of the defendant's accrued cause of action. (*Standard Brands of California* v. *Bryce* (1934) 1 Cal.2d 718, 720-721 [37 P.2d 446].)

For example, in *Shores* v. *Chip Steak Co.* (*Shores I*) (1955) 130 Cal.App.2d 620 [279 P.2d 591], plaintiff filed suit in Los Angeles against two corporations having their principal place of business in Alameda County. All parties were engaged in the business of preparing, selling and distributing "thin sliced fresh beef" in Los Angeles and several other counties. Plaintiff alleged that defendants' claimed that by using this name for his own product, plaintiff had infringed their rights

---

[8]The declaration of Frank Albo, the president of Mission, reads in pertinent part: "Mission has sold St. Pauli Girl beer and delivered beer to Anchor Distributing in Marin County ... It was Anchor Distributing that has distributed St. Pauli Girl beer in San Francisco County."

under a valid trademark. Accordingly, he sought a declaration that defendants did not have an exclusive right to use the name "chip steak" for this product.

Applying the rule of *Standard Brands of California* v. *Bryce, supra*, 1 Cal.2d 718, the court held that venue of the action was to be determined with reference to the nature of the defendants' accrued cause of action. (*Shores I, supra*, 130 Cal.App.2d at pp. 624-626.) An action for trademark infringement sounds in tort. Accordingly, the court declared that under the predecessor to section 395.5, the suit could be maintained in Los Angeles only if liability arose there. (*Id.*, at p. 624.) Upon finding that plaintiff's liability did arise in Los Angeles, the court denied defendants' motion to change the venue to Alameda. (*Id.*, at p. 626.)

In this case, the modification would make no difference. Both Bay's claims and Mission's claims sound in contract. Mission claims that Bay breached the contract between the parties by appointing other distributors for St. Pauli Girl beer and by wrongfully terminating the contract. Under section 395.5, Mission's action could be brought in any of the following counties, as well as Bay's principal place of business (San Bernardino): (1) the county where the contract was made (Los Angeles); (2) the county or counties where it was to be performed (all counties in California, including San Francisco); (3) the county or counties where the obligation or liability sued upon arose (all counties in California, including San Francisco [as regards exclusive distribution]); or (4) the county or counties where the breach occurred (Los Angeles [the termination] and any of the other unspecified counties in which Bay appointed another distributor). Under the provisions of section 395.5, San Francisco is among the proper counties for the trial of the contract claims.

### III.

The final issue to be decided is whether the trial court erred in assessing costs and fees against Mission. Section 396b provides that "in its discretion, the court may order the payment to the prevailing party of reasonable expenses and attorney's fees incurred in making or resisting such motion whether or not such party is otherwise entitled to recover his or her costs of action. In determining whether such order for expenses and fees shall be made, the court shall take into consideration (1) whether an offer to stipulate to change of venue was reasonably

made and rejected, and (2) whether such motion or selection of venue was made in good faith given the facts and law the party making the motion or selecting the venue knew or should have known. As between the party and his or her attorney, such expenses and fees shall be the personal liability of the attorney not chargeable to the party."

■ Where, as here, the trial court has discretionary power to decide an issue, its decision will be reversed only if there has been a prejudicial abuse of discretion. "'To be entitled to relief on appeal ... it must clearly appear that the injury resulting from such wrong is sufficiently grave to amount to a manifest miscarriage of justice. . . . [Citations.]'" (6 Witkin, Cal. Procedure, *supra*, Appeal, § 242, at p. 4234.)

■ Since Mission's motion for change of venue clearly lacked any legal foundation given the facts it knew or should have known, it cannot be said that the trial court abused its discretion in awarding Bay costs and fees of $350.

The petition for writ of mandate is denied and the alternative writ discharged. Real party in interest shall recover its costs against petitioner.

Mosk, J., Richardson, J., Newman, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.