[No. A037041. First Dist., Div. Two. Feb. 26, 1988.]

In re the Marriage of PAMELA JO and PATRICK FRANCIS HANLEY.
PATRICK FRANCIS HANLEY, Appellant, v.
PAMELA JO HANLEY, Respondent.

1112

COUNSEL

John Maderious for Appellant.

Peter David Rubin and Trombetta, Moskowitz & Rubin for Respondent.

**OPINION**

**KLINE, P. J.—**

## Introduction

Patrick Hanley appeals a judgment of the Sonoma County Superior Court holding that a divorce decree secured by his ex-wife Pamela Hanley from a Washington state court was controlling over a prior California decree secured by Patrick. He contends: (1) the judgment is not supported by the facts or by the court's own findings; (2) the Washington court was without jurisdiction as the prior California action had resolved the same issues; (3) only the prior California court had jurisdiction to resolve all issues; (4) the court erred in refusing to allow him to challenge the sufficiency of the evidence supporting the prior Washington judgment and no substantial evidence supports the division of property; (5) the current action was barred by the statute of limitations; (6) Pamela was equitably estopped from pursuing the action; (7) the court abused its discretion in denying his Code of Civil Procedure section 473 motion to set aside his default taken in the prior Washington case.

## Statement of the Case/Facts

Pamela and Patrick Hanley were married in 1966 in Idaho. They separated after purchasing a house in Rohnert Park, California. Pamela moved back to Seattle, Washington in 1977.

On April 5, 1977, Patrick filed for dissolution of marriage in the Sonoma County Superior Court. On April 6, 1977, Patrick was personally served in Washington with a summons and petition for a Washington dissolution. The next day, April 7, 1977, Pamela filed her action for dissolution in Washington. On April 20, 1977, Pamela was served in Washington with the summons in the Sonoma County action.

Patrick filed a response in the Washington action on April 20, 1977. On May 3, 1977, he appeared in the Washington action at a hearing on an order to show cause re visitation and temporary support. Patrick never moved to quash service of the summons in Washington nor did he otherwise challenge Washington's jurisdiction.

Pamela attempted to file a response seeking a stay of the California proceeding, but it was not in the proper form and was never filed as part of the California divorce proceeding. On June 16, 1977, Pamela's default was taken in the California action. Patrick obtained an interlocutory judgment

of dissolution of marriage on July 12, 1977. The California decree awarded the family residence to Patrick, determined that there was no disparity in property division, and ordered him to pay $100 per month per child for each of the parties' two children.

Patrick, through the same attorney who represented him at trial and on appeal, participated in the Washington action at least through the discovery stage. By letter dated August 25, 1977, attorney John Maderious, representing Patrick, communicated with the Washington court's law and motion judge stating he would not be appearing at the hearing on a motion for order compelling further discovery filed by Pamela.

On September 26, 1977, a Washington decree dissolving the marriage was entered. The Washington judgment awarded Pamela $150 per month per child as child support, $500 in attorney's fees, and $10,000 to equalize the property division at 6 percent interest. Pamela was directed to execute a deed on the family residence releasing her interest to Patrick. A final decree was entered in the California dissolution action on October 24, 1977.

Neither party took any steps to reconcile the differences in the two decrees. Through February 1986, Patrick paid support of $200 per month.[1] In all, Patrick paid $11,625 less than the child support order contained in the Washington decree. He paid nothing toward the property division or attorney's fees award ordered by the Washington court.

Patrick denied he was served with the Washington divorce decree. However, a proof of service shows that copies of the Washington divorce decree were served on him on October 3, 1977.

In early 1985, Patrick was attempting to sell the Rohnert Park residence and filed a motion to compel satisfaction of the California support judgment. Although not part of the record, neither party disputes that this motion was denied. Pamela thereafter moved in the Sonoma County Superior Court to determine which of the conflicting divorce decrees was controlling and to establish the amount of arrearages.[2]

After trial, the court determined that the Washington decree was controlling. The court relied upon California and Washington authority recogniz-

---

[1] Patrick did not pay support during certain months when one of the children was living with him, and on some occasions he purchased clothing for the children in lieu of his monthly support payment.

[2] Pamela did not attempt to register the Washington judgment under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA). (Code Civ. Proc., § 1650 et seq.) However, it is clear that RURESA is "in addition to and not in substitution for any other remedies." (Code Civ. Proc., § 1654.)

ing that " 'where two tribunals of this state have concurrent jurisdiction over the same parties and subject matter, the tribunal which first acquires jurisdiction of the parties is entitled to retain it exclusively. The other must respect the priority of the first and must desist from further proceedings so long as the matter is pending before the first.' " (Statement of decision of the trial court, at page 203, quoting *Mungia* v. *Superior Court* (1964) 225 Cal.App.2d 280, 283 [37 Cal.Rptr. 285].) The court held that the Washington court first acquired jurisdiction by virtue of Pamela's first completing filing of the complaint and service on Patrick prior to his completing service of the Sonoma County action on her.

The court established support arrearages through February, of $11,625, plus interest at the Washington statutory rate, $500 delinquent attorney's fees, plus statutory interest, $10,000 in property division, plus interest at the rate ordered in the Washington judgment, and attorney's fees of $1,500 for establishing that the Washington decree was controlling. The court retained jurisdiction to make such orders as necessary concerning title to the real property.

On October 27, 1986, Patrick moved in the Sonoma County Superior Court, to set aside the Washington judgment. The motion was purportedly made pursuant to Code of Civil Procedure section 473, was addressed to the court's statutory authority to grant relief from default for excusable neglect, and was based on counsel's declaration as to the facts presented at the recently held trial. This motion was denied.

*Discussion*

I.

*Whether the court erred in determining that the Washington judgment was "valid, binding and effective between the parties" and "enforceable under the laws of the State of California"*

■ Patrick urges that the court erred in determining that the Washington judgment was entitled to enforcement and argues that the California court alone had jurisdiction to determine all issues between the parties. We disagree.

The rule in California is that " '[W]here two [courts] have concurrent jurisdiction over the same parties and subject matter, the tribunal which first acquires jurisdiction of the parties is entitled to retain it exclusively.' (*Mungia* v. *Superior Court* (1964) 225 Cal.App.2d 280, 283 . . . .) Ordinarily, the other court must abate its proceedings on demand. (*Ibid.*)" (*Mission*

*Imports, Inc.* v. *Superior Court* (1982) 31 Cal.3d 921, 926, fn. 3 [184 Cal.Rptr. 296, 647 P.2d 1075].) "In applying this rule it is the tribunal where process is served first which has priority, regardless of which action was filed first." (*Mungia* v. *Superior Court, supra,* at p. 283.) A summons may not be obtained until a complaint is filed. (Code of Civ. Proc., §§ 411.10, 411.20.)

Thus, under California law, the Washington court first acquired jurisdiction of the matter, as Pamela first completed service of her complaint on Patrick, despite the fact that his complaint was filed first.

The general rule in Washington is the same. That is: "when the jurisdiction of two courts is invoked concerning the same subject of controversy, the court first obtaining jurisdiction has power to determine the controversy to the exclusion of the other court. [Citation.]" (*State* v. *Uland* (1950) 36 Wn.2d 176 [216 P.2d 756, 758].) However, a peculiar twist in the language of the Washington statute at one time made it difficult to determine when jurisdiction was acquired by the superior court. (*Ibid.*)[3] That language provides that as between courts of Washington, there operates a 90-day time limit within which summons must be served following the filing of the complaint.

· In *State* v. *Uland, supra,* 216 P.2d 756, the Supreme Court of Washington held that in view of this 90-day proviso, where a complaint is filed in the superior court of one county, "that court has the exclusive right for not more than ninety days to complete commencement of the action, or in other words, to acquire jurisdiction upon service of process being made on one or more of the defendants." (*Id.,* at p. 760.)

Patrick did *not* file his complaint in Washington, but in California. No rule of law requires the 90-day time limit established in the Washington statute should apply to actions filed in California, where California would not grant that action priority. As Pamela argues, "There is neither authority, nor logic, for the proposition that the court in Washington would lose the right to proceed in a dissolution because a complaint was filed in an out-of-state court when that complaint had not been served."

It is clear that the Washington court first obtained jurisdiction and the right to proceed with the action to the exclusion of the California court.

---

[3] The Washington statute on commencement of civil actions provides: "Civil actions in the several superior courts of this state shall be commenced by the service of a summons, as hereinafter provided, or by filing a complaint with the county clerk as clerk of the court: *Provided,* That unless service has been had on the defendant prior to the filing of the complaint, the plaintiff shall cause one or more of the defendants to be served personally, or commence service by publication within ninety days from the date of filing the complaint." (Wash.Rev.Code.Ann. § 4.28.010 (formerly Rem.Rev.Stat. § 220), italics in original.)

## II.

*Whether the face of the judgment indicates the court erred in concluding the Washington action was filed and served prior to filing and service of the California action*

■ The judgment issued by the court contains a finding that, "*filing and* service in the Washington dissolution proceeding was completed prior to *filing and* service of the California dissolution action." (Italics added.) The court had added the italicized references to the proposed judgment.

Patrick asserts that this finding is "false" since the court's statement of decision found, and both parties acknowledged, that the California action was filed first. This misconstrues the judgment. Certainly the court was aware of the time frame within which filing, service, and subsequent proceedings in the actions occurred. The statement of decision issued by the court on August 19, 1986, contains an accurate chronology of events and the court there found that "although husband filed first in California, wife served and filed her Washington action prior to wife being served in the California action." The court continued: "Both the courts in California and Washington indicate that jurisdiction is acquired by the filing of the complaint and service."

The judgment is to the same effect. Only a strained reading of the judgment could lead one to conclude that the court was finding that the actual filing of the Washington action preceded the filing of the California action. Rather, consistent with the detailed chronology contained in its statement of decision, the court found that Pamela had completed both filing *and* service of the Washington action prior to Patrick's completion of *both* filing and service of the California action.

## III.

*Alternative analysis, Washington judgment supersedes as it was effectively the last in time*

■ In the alternative, Pamela contends that even assuming the California decree was valid when rendered, it is superseded by the valid Washington judgment as the Washington judgment was effectively the last in time. We agree.

■ "A judgment rendered in a State of the United States will not be recognized or enforced in sister States if an inconsistent, but valid, judgment is subsequently rendered in another action between the parties and if the

earlier judgment is superseded by the later judgment under the local law of the State where the latter judgment was rendered." (Rest.2d Conflicts (1971) § 114.) Moreover, "When in two actions inconsistent final judgments are rendered, it is the later, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata." (Rest.2d Judgments (1982) § 15.) This is the case even where the court which rendered the later judgment denied full faith and credit to the first judgment or made other errors of fact or law. (Rest.2d Conflicts, § 114, com. a.)

The rationale for the rule is explained in the comment to section 114 of the Restatement of Conflicts: "The rule of this Section is based upon principles of res judicata and of full faith and credit. It is appropriate that the losing party should be precluded from attacking the later inconsistent judgment if he has not sought review of this judgment both by the appellate courts of the State of rendition and by the Supreme Court of the United States or if the judgment has been affirmed by these courts. So, if under these circumstances the same issue has been differently decided in different actions between the parties, the determination that is later in time should control if it would have this effect under the local law of the State of rendition. . . . To be sure, the later judgment may be erroneous and the first judgment correct. But the parties had the opportunity to litigate the point at issue before the second court to appeal from its judgment and ultimately to seek review by the Supreme Court." (Rest.2d Conflicts, *supra,* § 114, com. b; see generally, *Treinies* v. *Sunshine Min. Co.* (1939) 308 U.S. 66 [84 L.Ed. 85, 60 S.Ct. 44].)

 Although here the final judgment of dissolution in the California action was rendered after the Washington judgment, the California interlocutory decree was entered before the Washington decree. Prior to 1984, all matters adjudicated by the interlocutory decree, including support and property division issues, were immediately appealable. (Former Code Civ. Proc., § 904.1, subd. (j), repealed eff. July 1, 1984.)[4] "[W]here . . . an interlocutory judgment of divorce has become final in the sense that it is no longer subject to appeal, motion for new trial or relief pursuant to section 473 of the Code of Civil Procedure, it is res judicata on all questions determined therein including the property rights of the parties. Absent any continuing authority of the court to modify its orders relating to alimony, the trial court is without jurisdiction to vacate or modify such judgment in

---

[4] Currently there is only a single judgment of dissolution, which adjudicates the entire matter before the court (except as to reserved issues). Appeal rights are from this single judgment under Code of Civil Procedure section 904.1, subdivision (a), and the time for appeal begins to run from entry of that judgment. (1 Hogoboom & King, Cal. Practice Guide: Family Law (TRG 1987) § 16:85, p. 16-20.)

any way. [Citations.]" *(Grant* v. *Superior Court* (1963) 214 Cal.App.2d 15, 20 [29 Cal.Rptr. 125], and cases there cited.)

█ Because it was immediately appealable and dispositive of all relevant property issues, the California interlocutory decree, rather than the final decree, is the one to which we look when determining whether it or the Washington decree was last in time. Clearly, the California interlocutory decree preceded the Washington decree. Consistent with the reasoning underlying the last judgment in time given effect rule, the Washington decree superseded the prior inconsistent California decree.

## IV.

*Whether the trial court erred in refusing to allow Patrick to attack the Washington judgment as unsupported by substantial evidence*

At trial, Patrick attempted to show that the Washington judgment was taken by default and that no evidence was presented at that proceeding to support the court's property division or child support order. The trial court refused to allow Patrick to introduce evidence to that effect or to challenge the substance of the Washington decree. We believe the trial court was correct.

"Judgments and orders of another state must be given full faith and credit (i.e., recognition and enforcement) in California if *final,* and rendered by a court of *competent jurisdiction* in accordance with the procedural requirements of the U.S. Constitution and the forum state's laws. [Original emphasis.]" (Hogoboom & King, *supra,* § 18:167, p. 18-57, citing Cal.Const. art. IV, § 1 and *Biewend* v. *Biewend* (1941) 17 Cal.2d 108 [109 P.2d 701, 132 A.L.R. 1264]; see also Adams & Sevitch, Cal. Family Law Practice (1986) § B.28.) █ "Sister state divorce judgments are entitled to full faith and credit in California if the responding party was given constitutionally sufficient notice and opportunity to be heard and the rendering court had proper jurisdiction (i.e., domicile of petitioner to establish 'in rem' jurisdiction over the 'res' [marriage status], and in personam jurisdiction if required by the nature of the issues adjudicated [money judgments])." Hogoboom & King, *supra,* § 18:168, p. 18-58, citing *Williams* v. *North Carolina* (1942) 317 U.S. 287 [87 L.Ed. 279, 63 S.Ct. 207, 143 A.L.R. 1273].) Child support orders are always modifiable as to *future* liability, but must be given full faith and credit as to arrearages which are not modifiable in the state which rendered the order. *(In re Marriage of Taylor* (1981) 122 Cal.App.3d 209 [175 Cal.Rptr. 716]; see also Hogoboom & King, *supra,* § 18:173, p. 18-59.) Moreover, as a matter of comity, California courts will

enforce orders for future support as long as the parties are given opportunity to litigate the question of modification. (*Ibid.*, and cases there cited.)

As to orders affecting property, if the forum state has personal jurisdiction over the parties and the property is present within the forum state, the court can validly adjudicate rights to that property and pass title by the decree. If the property is located in California, the out-of-state court cannot directly affect title, but any judgment based on personal jurisdiction over both parties will be recognized and enforced in California. (See *Barber* v. *Barber* (1958) 51 Cal.2d 244 [331 P.2d 628]; *Rozan* v. *Rozan* (1957) 49 Cal.2d 322; Hogoboom & King, *supra,* § 18:175, pp. 18-59–18-60.)

Under the laws of Washington, support arrearages are nonmodifiable. ■ Accrued installments of support awards under a divorce decree are vested and may not be retrospectively modified. (See, e.g., *Koon* v. *Koon* (1957) 50 Wn.2d 577 [313 P.2d 369]; *Mathews* v. *Mathews* (1970) 1 Wn.App. 838 [466 P.2d 208, 211]; Annot. (1949) 6 A.L.R.2d 1277, 1283-1286.) Thus, the trial court was without authority to modify the support arrearages under the Washington order.

Patrick refers to the rule that extrinsic evidence may be admitted to support a collateral attack on another state's judgments. (Adams & Sevitch, *supra,* § B:42.) ■ However, collateral attack must be posited on an asserted *jurisdictional defect*. Such defect renders the judgment of no force or effect and not entitled to full faith and credit. (Hogoboom & King, *supra,* §§ 18:189-18:191, p. 18-64; 8 Witkin, Cal. Procedure (3d ed. 1985) § 6, p. 410.) No jurisdictional defect has been asserted here. The Washington court had jurisdiction over the parties and as Pamela's domicile, over the marriage. Even the availability of such jurisdictional attack is limited where the disputed issue has already been litigated by the parties, or could have been litigated in the underlying proceeding. In that event, the determination is res judicata and cannot be challenged by collateral attack in a later proceeding. (Hogoboom & King, *supra,* §§ 18:196 - 18:200, pp. 18-65–18-66, and cases there cited.) ■ Clearly Patrick appeared in the Washington action and had the opportunity to raise any jurisdictional challenges at that time. For the purpose of the doctrine of res judicata, that judgment would be binding, even if incorrect. (*Smith* v. *Smith* (1981) 127 Cal.App.3d 203, 209 [179 Cal.Rptr. 492], and cases there cited.)

The Washington court may have exceeded its powers in ordering Pamela to convey her interest in the California property to Patrick, as this could be viewed as directly affecting title. (Cf. *Vasquez* v. *Vasquez* (1952) 109 Cal.App.2d 280 [240 P.2d 319].) Nevertheless, as the judgment was based on personal jurisdiction over both parties, the trial court properly recog-

nized and enforced that aspect of the Washington judgment. (*Barber* v. *Barber, supra,* 51 Cal.2d 244; *Rozan* v. *Rozan, supra,* 49 Cal.2d 322, 330-331; see Hogoboom & King, *supra,* § 18:175, p. 18-60.)

## V.

*Statute of limitations and estoppel defenses raised by Patrick on appeal were not properly raised below*

On appeal, Patrick asserts that Pamela's action to enforce the Washington judgment was barred by her failure to act within the period of the statute of limitations. He further asserts that Pamela was estopped from asserting the priority of the Washington decree as she concealed the Washington decree and made no effort to have it served on Patrick, who was not aware of it, she accepted the lesser support payments of the California decree and did not act to enforce the Washington decree for eight years. Neither claim has merit.

*Statute of Limitations.* Patrick did not raise the statute of limitations argument until after trial at the September 25, 1986, hearing on attorney's fees and sanctions. It is well established that "[t]he defense of the statute of limitations must be specially pleaded or otherwise appropriately raised by the defendant . . . ." (3 Witkin, *supra,* Actions, § 315, p. 346.) Having failed to raise the defense in his answer or even at trial, Patrick certainly may not assert it now.

More importantly, it appears the applicable statute is Code of Civil Procedure section 337.5, subdivision 3, governing out-of-state judgments. This statute establishes a 10-year limitations period. (*Morris* v. *Cohen* (1983) 149 Cal.App.3d 507 [196 Cal.Rptr. 834].)

*Estoppel.* Patrick also failed to assert his estoppel contention at the pleading stage. "Estoppel is an affirmative defense which cannot be proved unless specially pleaded by the defendant. [Citations.]" (5 Witkin, *supra,* Pleading, § 1044, p. 460.) Although defendant need not use the term "estoppel," defendant's answer "should set forth the circumstances from which the estoppel arises." (*Id.,* at p. 461.) Patrick's answer is wholly deficient in this regard.

Moreover, the evidence at trial failed to support his claimed estoppel. Specifically, no evidence was presented that Pamela misled Patrick about the Washington decree. Evidence was presented that a copy of the Washington decree was personally served on Patrick. Pamela explained that she

delayed in seeking to enforce the Washington decree because she previously could not afford the cost of enforcing the award.

## VI.

*The court properly denied Patrick's motion to set aside the judgment under Code of Civil Procedure section 473*

Following judgment herein, Patrick filed a motion to set aside a default judgment under Code of Civil Procedure section 473. By this motion Patrick attempted to convince the California trial court to set aside the dissolution action of the Washington court on the grounds that the Washington judgment was taken against him by default and that he had no notice of the entry of judgment in that action until Pamela initiated the instant enforcement action.[5]

Indulging, for the moment, the extremely dubious proposition that a California court may utilize California Code of Civil Procedure section 473 to set aside a Washington court's default judgment, we are unpersuaded that Patrick is entitled to relief under the cited statute.

Initially, the record does not show that the Washington judgment was one taken by default. Pamela concedes this point to avoid misleading this court, but asserts that this court should not take cognizance of such fact where the record does not show a default judgment was entered. We need not rely on the absence of proof of default as the record fails to show the type of mistake, inadvertence, or excusable neglect on the part of Patrick which would entitle him to relief. Patrick makes no attempt to explain his failure to appear at trial. It is clear that he participated in Washington pretrial proceedings, either personally or through his attorney and never claims to have been advised those proceedings had terminated. Moreover, Patrick did not timely pursue a section 473 motion within the six-month statutory time limit. Contrary to his claims of ignorance of the Washington judgment, the record indicates Patrick was personally served with the decree and related orders in Sonoma County on October 3, 1977.

Finally, Patrick now claims that the trial court erred in failing to exercise its equitable powers to set aside the Washington default.[6] The grounds upon which such relief may be granted in equity are "somewhat narrower" than those under section 473. (*In re Marriage of Coffin* (1976) 63 Cal.App.3d

---

[5] The parties have not furnished this court with a reporter's transcript of the hearing on that motion; we rely on the clerk's transcript and the record of the trial proceedings.

[6] It must be noted that the record indicates Patrick relied below solely upon the statute and never requested the court below to exercise any equitable power.

139, 149 [133 Cal.Rptr. 583].) As Patrick failed to demonstrate that neglect on his part was "excusable" under section 473, he certainly cannot prevail on the narrower nonstatutory ground.

The judgment is affirmed. Costs are awarded to Pamela as the prevailing party on appeal.

Rouse, J., and Benson, J., concurred.