[No. C042660. Third Dist. May 27, 2003.]

BLACK DIAMOND ASPHALT, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Real Party
in Interest.

COUNSEL

Law Offices of Brunn & Flynn, Charles K. Brunn and Roger S. Matzkind for Petitioner.

No appearance for Respondent.

Black, Compean & Hall, Frederick G. Hall and Vicente Valencia, Jr., for Real Party in Interest.

OPINION

CALLAHAN, J.—We granted an alternative writ in this case to determine whether the California Insurance Guarantee Association (CIGA), an unincorporated association with its principal business in the County of Los Angeles, may only be sued in that county despite the fact that CIGA allegedly incurred a statutory liability to defend the plaintiff in a lawsuit in San Joaquin County.

Code of Civil Procedure section 395.5 (all further unspecified statutory references are to this code) permits an association such as CIGA to be sued in the county "where the obligation or liability arises." We conclude this section permits venue in San Joaquin County where the obligation plaintiff seeks to enforce is strictly statutory rather than one sounding in tort or contract. We will issue a peremptory writ.

## BACKGROUND

Petitioner herein, Black Diamond Asphalt, Inc. (Black Diamond), was named along with Jesus Garcia Adames as a defendant in a wrongful death suit filed in San Joaquin County (*Romo v. Garcia*, hereafter the *Romo* lawsuit). The plaintiffs in the *Romo* lawsuit are the surviving heirs of decedent Martin Romo Almaras. They allege that on October 27, 1999,

Adames was driving a tractor-truck while pulling a trailer owned by Black Diamond on State Route 88 in San Joaquin County; that Adames negligently made an unsafe driving maneuver, lost control of his truck, and collided with the vehicle operated by the decedent, thereby killing decedent. The *Romo* plaintiffs seek damages against Adames and Black Diamond.

■ CIGA is a creature of statute. (Ins. Code, § 1063 et seq.) It was created in 1969 as a compulsory association of state-regulated insurance companies, for the purpose of providing insurance against loss arising from the failure of an insolvent insurer to discharge its insurance policy obligations. (*R.J. Reynolds Co. v. California Ins. Guarantee Assn.* (1991) 235 Cal.App.3d 595, 599 [1 Cal.Rptr.2d 405] (*R.J. Reynolds*).)[1]

As an unincorporated association, CIGA filed a statement of unincorporated association with the Secretary of State (Corp. Code, § 24003), listing an address for its principal office in the City of Glendale, which is in Los Angeles County.

Black Diamond filed the present action for declaratory relief in San Joaquin County Superior Court. The complaint seeks a declaration that CIGA is required to defend and indemnify Black Diamond in the *Romo* lawsuit. The basis for CIGA's asserted liability is that Black Diamond is an "additional insured" on an automobile policy issued to Adames by Credit General Insurance Company (Credit General); that Credit General became insolvent in April 2001; that under Insurance Code section 1063.1, CIGA is required to defend and indemnify insureds of a covered claim; and that the *Romo* action is such a covered claim. Black Diamond alleged that an actual controversy had arisen between it and CIGA as to whether CIGA owed a statutory duty to defend and indemnify it in the *Romo* lawsuit; it prayed for a judicial resolution of the dispute.

CIGA immediately moved for an order to change venue of the declaratory relief action to Los Angeles County. CIGA claimed that under section 395.5, the only appropriate venue for the action was the location of its principal office, since the liability sued upon is neither tortious nor contractual. The trial court agreed and ordered the declaratory relief action transferred to Los Angeles County.

---

[1]"CIGA assesses its members when another member becomes insolvent, thereby establishing a fund from which insureds whose insurers become insolvent can obtain financial and legal assistance. [Citation.] Member insurers then recoup assessments paid to CIGA by means of a surcharge on premiums to their policy holders. [Citation.] In this way the insolvency of one insurer does not impact a small segment of insurance consumers, but is spread throughout the insurance consuming public, which in effect subsidizes CIGA's continued operation." (*R. J. Reynolds, supra*, 235 Cal.App.3d at p. 600.)

Black Diamond thereafter filed the instant petition for writ of mandate. We issued an alternative writ. We will now issue a peremptory writ, directing the superior court to vacate its order and to deny the motion for change of venue.

## DISCUSSION

■ We note at the outset that the county where the complaint was filed is presumptively the proper county for a trial of the action, and the burden of proving otherwise rests with the party moving to change venue, here CIGA. (*Mission Imports, Inc. v. Superior Court* (1982) 31 Cal.3d 921, 929 [184 Cal.Rptr. 296, 647 P.2d 1075] (*Mission Imports*).) To succeed on a motion to change venue, it must be shown that the county in which the action was filed was "improper under any applicable theory." (*La Mirada Community Hospital v. Superior Court* (1967) 249 Cal.App.2d 39, 42 [57 Cal.Rptr. 42].)

■ CIGA is an unincorporated association with its principal place of business in Los Angeles County. Under section 395.2, venue for unincorporated associations is to be determined in the same manner as if the association were a corporation.[2]

Section 395.5 governs venue for corporate defendants. It states in material part: "A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or in the county where the principal place of business of such corporation is situated, . . ."

■ Venue for declaratory relief actions, such as the one at bar, is determined by the nature of the subject matter of the action. (*Mission*

---

[2]At oral argument, CIGA argued, for the first time in these proceedings, that section 395.5 is *not* the applicable venue statute because a "claim" against CIGA is a "special proceeding" rather than a civil action. As authority for this proposition, CIGA relied on *Abraugh v. Gillespie* (1988) 203 Cal.App.3d 462 [250 Cal.Rptr. 21] (*Abraugh*). Because the argument is waived as untimely, we need not address it. (*Stevenson v. Baum* (1998) 65 Cal.App.4th 159, 167, fn. 8 [75 Cal.Rptr.2d 904].)

In any event, *Abraugh* does not help CIGA. *Abraugh* involved an *administrative claim against the Insurance Commissioner* in her capacity as liquidator of an insolvent insurance company. The filing of such a claim is one of the prerequisites to recovery from CIGA for losses not paid for by an insolvent insurer. (See Ins. Code, § 1063.1, subd. (c)(1)(iii).) Abraugh sought leave to file a late claim against the commissioner under section 473, based on "excusable neglect." We noted that relief under section 473 was not authorized because that section comes within the title concerning pleadings in civil actions, and a claim against the commissioner is not a civil action but a special proceeding governed by a comprehensive scheme set out in the Insurance Code. (*Abraugh, supra,* 203 Cal.App.3d at p. 468.)

This lawsuit is neither against the commissioner nor a special proceeding. It is an ordinary civil action for declaratory relief against an unincorporated association.

*Imports, supra,* 31 Cal.3d at p. 930.) In determining proper venue, the court inspects the complaint and the complaint alone for the purpose of determining the character of the action. (*Peiser v. Mettler* (1958) 50 Cal.2d 594, 601 [328 P.2d 953, 74 A.L.R.2d 1].)

■ Although Black Diamond seeks a declaration that CIGA owes a duty to defend and indemnify it in the *Romo* lawsuit, the obligation sought to be enforced in this action is not contractual. ■ This is because CIGA does not "stand in the shoes" of the insolvent insurer. (*Biggs v. California Ins. Guarantee Assn.* (1981) 126 Cal.App.3d 641, 645 [179 Cal.Rptr. 16].) "CIGA issues no policies, collects no premiums, makes no profits, *and assumes no contractual obligations.*" (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 787 [244 Cal.Rptr. 655, 750 P.2d 297], italics added.) ■ Since the liability at issue arises strictly from statute, the "contract made," "contract performed," and "breach" provisions of section 395.5 are not apposite. Section 395.5 does, however, give a plaintiff the option of commencing suit against an association in the county where "the obligation or liability arises." This section must be read in light of the paramount purpose of section 395.5, which is to permit a wider choice of venue against corporations or associations than would be permitted in suits against individuals. (See *Mission Imports, supra,* 31 Cal.3d at p. 928.)

We have not found any case which applies the "liability or obligation" language of section 395.5 to a lawsuit seeking only to enforce a *statutory* obligation or liability. As Witkin notes, the venue cases which have analyzed statutory obligations have sought to pigeonhole the action into contract, quasi-contract, or tort categories, with unclear results. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 138, p. 203, and cases cited therein.)

This seems to us a confusing and unnecessary approach. There is no reason why statutory liability cases should not be analyzed independently for purposes of determining proper venue. After all, section 395.5 speaks generically of where the "obligation or liability" arises. An "obligation" is defined by Civil Code section 1427 as "a legal duty, by which a person is bound to do or not to do a certain thing." Under Civil Code section 1428, "An obligation arises *either* from: [¶] One.—The contract of the parties; *or,* [¶] Two.—The operation of law." (Italics added.) Thus, obligations created by statute are separate animals from those which emanate from contract. (See *Cate v. Stapleton* (1941) 43 Cal.App.2d 492, 495 [111 P.2d 437].)

The complaint at bar asserts that CIGA breached its statutory duties under the Insurance Code by refusing to defend and indemnify Black Diamond in a lawsuit filed in San Joaquin County. It requires no extended discussion to

conclude that the liability or obligation, if any, arose in San Joaquin County. That is where Black Diamond was sued; that is where it stands exposed to liability; and that is where it will suffer harm if CIGA fails to live up to its alleged statutory obligations.

CIGA's briefing in opposition largely misses the point because it analyzes venue only in terms of contract or tort liability. Thus, CIGA's assertions that there is no contractual basis for venue against it or that statutory duties cannot be transformed into contractual obligations, while true, are irrelevant. There is no question that venue here cannot arise ex contractu. And because the asserted liability does not arise in tort, it is also beside the point that CIGA did not "perform[] any act" in San Joaquin County, or that it "has taken no affirmative action whatsoever within San Joaquin County with respect to [Black Diamond]."

The operative question is whether the statutory liability sued upon *arose* in San Joaquin County. ■ For purposes of laying venue, a liability "arises" where the injury occurs. (*Shida v. Japan Food Corp.* (1960) 185 Cal.App.2d 443, 448 [8 Cal.Rptr. 271] (*Shida*); *Tingley v. Times-Mirror Co.* (1904) 144 Cal. 205, 206 [77 P. 918].) Injury " 'means a wrongful invasion of legal rights.' " (*Shida, supra,* at p. 448, quoting *People v. Hess* (1951) 107 Cal.App.2d 407, 424 [237 P.2d 568].) ■ In this case, the threatened injury to Black Diamond caused by CIGA's alleged breach of statutory duties will occur in San Joaquin County, where it has been named as a defendant in a third party lawsuit. Furthermore, because the present complaint seeks to enforce obligations of defense and indemnification in a judicial forum in San Joaquin County, those duties arise in that county.[3] An action for declaratory relief against an insurer may be commenced in the county where a third party claimant sues, because that is where the insurer's liability arises. (See Croskey & Kaufman, Cal. Practice Guide: Insurance Litigation (The Rutter Group 2002) ¶ 15:445, p. 15-74.) There is no reason why the same rule should not be applied where the obligation is created by a statute rather than an insurance contract.

At oral argument, CIGA attempted to portray this claim as arising out of the insolvency of an insurer rather than the filing of a third party claim, since Black Diamond's insurer became insolvent *after* the *Romo* lawsuit was filed. CIGA suggests that the timing of the third party claim somehow affects the nature of CIGA's liability for venue purposes.

The point is not convincing. CIGA is statutorily obligated to defend a "covered claim." A covered claim is an obligation which, inter alia, is within

---

[3]CIGA must not only pay covered claims but furnish a defense when required by policy provisions. (Ins. Code, § 1063.2, subd. (a).) Indeed, in all proceedings involving a covered claim, CIGA has the same rights an insolvent insurer would have if not in liquidation, including investigating, adjusting, and handling such claims as well as appearing, defending, appealing, and settling them. (Ins. Code, § 1063.2, subd. (b).)

the coverage of the policy of an insolvent insurer and was incurred prior to the date coverage terminated or within 30 days after a liquidator was appointed. (Ins. Code, § 1063.1, subd. (c).) Clearly, in order for an obligation on the part of CIGA to arise, there must be *both* an insurer's insolvency and a third party claim. However, under the circumstances of this statutory coverage, which occurs first is, certainly at least for venue purposes, legally irrelevant.

In an attempt to persuade us that its statutory obligations can only be performed in Los Angeles County, CIGA argues that (1) it made the decision not to defend or indemnify Black Diamond in that county; and (2) even if CIGA were obligated to defend a lawsuit in San Joaquin County it need not send its employees into San Joaquin County to perform legal services, but would simply receive invoices for legal fees and costs and send out checks from its home office in Glendale.[4]

None of these metaphysical observations can change the fact that the *liability*—the duty to defend and indemnify—arose in San Joaquin County. The "obligation or liability" provision of section 395.5 does not require that the defendant perform any act inside the county for venue to be proper; it merely requires that the obligation arise there.

Finally, CIGA argues that requiring lawsuits of this nature to be commenced only in Los Angeles County would be in the interest of public policy. CIGA raises the specter that if policyholders of insolvent insurers are permitted to commence their actions in counties where they are sued, CIGA will be forced to transport attorneys to "remote counties" for court hearings, depositions and the like, thereby diminishing the amount of funds available to pay covered claims.

CIGA's claimed hardship leaves us unmoved, especially in light of its earlier insistence that it can perform all the functions necessary to fulfill its statutory responsibilities out of its principal office in Glendale. As it is no doubt aware, CIGA need not transport its own attorneys to faraway places when it can easily retain local counsel who are just as capable. Two further observations are in order.

First, in terms of relative hardship, CIGA is certainly better equipped to defend lawsuits in remote counties than are consumers left behind by their

---

[4]Some of these facts were derived from a declaration of one of CIGA's employees, which is attached to its opposition in this proceeding. CIGA asks us to consider this evidence even though it was never before the trial court. We need not pass on the merits of CIGA's request because even if the declaration is considered and accepted as true, our conclusion would remain unchanged.

insolvent insurers in those remote counties who, under CIGA's interpretation of section 395.5, may be forced to litigate in Los Angeles County simply to secure the benefits granted them under the statute.

Second, the Legislature has, in numerous other instances, exercised its power to fix venue in specific counties. (See Gov. Code, § 17612 [venue for declaratory relief actions by local agency to enjoin unfunded mandates shall be in Sacramento County]; Bus. & Prof. Code, § 19807 [legal challenges to regulations issued by the Cal. Gambling Control Commission shall be brought in Sacramento, Los Angeles, San Diego, or San Francisco]; Code Civ. Proc., § 1609 [venue for actions by the Attorney General to determine state's right to unclaimed property must be brought in Sacramento County]; Food & Agr. Code, §§ 68113, 69093 [state Kiwifruit and Pistachio Commissions may only be sued in the county of their principal offices].) It has not done so with respect to CIGA actions. Absent specific legislation creating venue for CIGA actions exclusively in one county, it would be inappropriate for the courts to create such a result by implication. (See *Lubner v. City of Los Angeles* (1996) 45 Cal.App.4th 525, 529 [53 Cal.Rptr.2d 24].) Until and unless the Legislature says otherwise, we must hold CIGA to the same venue rules applicable to other unincorporated associations.

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order transferring venue from San Joaquin County to Los Angeles County and to enter a new order denying CIGA's motion for change of venue.

Davis, Acting P. J., and Kolkey, J., concurred.