[No. A075003. First Dist., Div. Five. Nov. 12, 1997.]

MISSION HOUSING DEVELOPMENT COMPANY et al., Plaintiffs and Appellants, v.
CITY AND COUNTY OF SAN FRANCISCO, Defendant and Respondent.

**COUNSEL**

Robert S. Beach, Divelbiss & Divelbiss, Divelbiss, Divelbiss & Bonzell, Rod Divelbiss and Mark J. Divelbiss for Plaintiffs and Appellants.

Louise H. Renne, City Attorney, Dennis Aftergut, Chief Assistant City Attorney, Claude F. Kolm and Jeffrey S. Margolis, Deputy City Attorneys, for Defendant and Respondent.

## OPINION

**JONES, J.**—This is an action for refund of property taxes brought by appellants (hereafter Taxpayers), a number of corporations and limited partnerships that own low-income housing projects in the City of San Francisco,[1] against respondent the City and County of San Francisco (hereafter the City). In this appeal, Taxpayers challenge the trial court's judgment upholding the San Francisco Assessment Appeals Board's (hereafter AAB) decision denying a number of applications for reduction in assessment filed by Taxpayers for tax years 1982-1983 through 1987-1988.

### SUMMARY OF ISSUES AND CONCLUSIONS

Due to the number of issues the parties have raised on appeal, we begin our opinion by summarizing the major issues and our conclusions thereon.

(1) Taxpayers contend they are entitled to have their opinions of the value of their properties, stated in their applications for reduction in assessment, inserted on the county assessment roll for tax years 1983-1984 through 1986-1987 because the AAB failed to hear and make a final determination on their applications within two years after they were filed, as required by Revenue and Taxation Code section 1604, subdivision (c).[2] The City contends Taxpayers affirmatively waived the two-year requirement and are otherwise estopped to enforce it. The City also contends section 1604, subdivision (c) is not applicable in this case, and is otherwise unconstitutional.

The City failed to plead the waiver and estoppel issues as affirmative defenses in its answer, and is therefore barred from relying on those defenses. We reject the City's contention that section 1604, subdivision (c) does not apply because Taxpayers provided only nominal property values on their applications and thus failed to provide full and complete information on their applications. Even if this were true, the AAB was required to inform Taxpayers of this defect in writing in order to avoid the effect of section 1604, subdivision (c). In addition, the City has failed to carry its burden of overcoming the presumption of constitutionality attached to section 1604, subdivision (c).

We thus conclude that Taxpayers are entitled to have their opinions of value, as stated in their applications for reduction in assessment, inserted on

---

[1] Taxpayers are Mission Housing Development Company, Friendship Village, Inc., Third Baptist Gardens, Inc., Laurel West, Inc., Thomas Paine Ltd. Partnership, Vista Del Monte, Ltd., Buchanan Park, Ltd., Prince Hall, Ltd., Glenridge Apartments, Ltd., Casa de la Raza, Inc., and St. Francis Square Apartments, Inc.

[2] All statutory references are to the Revenue and Taxation Code unless otherwise indicated.

the assessment roll for the tax years during which they awaited a hearing. For reasons we shall explain, however, this conclusion holds only with respect to tax years 1985-1986 and 1986-1987.

(2) The City counters Taxpayers' procedural argument by asserting that Taxpayers failed timely to file their refund claims with the San Francisco Board of Supervisors for tax years 1982-1983 through 1984-1985. Taxpayers contend the AAB caused the delay by failing timely to adjudicate their applications for reduction in assessment. We conclude, based on the language of section 5097, that Taxpayers' refund claims were untimely for the years in question, as well as for a payment made on November 5, 1985, for the Prince Hall property for tax year 1985-1986. We therefore affirm the trial court's judgment with respect to tax years 1982-1983 through 1984-1985.

(3) The City also argues that Taxpayers failed to exhaust their administrative remedies before filing this court action. Taxpayers contend the City failed timely to raise this defense below and has thus waived it. The defense of failure to exhaust administrative remedies may be waived if not properly and timely raised. To the extent the City's exhaustion defense is based on Taxpayers' purported failure to file valid applications for reduction in assessment, the City failed to raise this issue below. The City adequately raised this defense, however, to the extent it is based on Taxpayers' purported failure to file valid claims for tax refund. Although the City is correct that Taxpayers' refund claims were not properly verified, we nonetheless conclude that this defect is not fatal to Taxpayers' claims, and, therefore, that Taxpayers properly exhausted their administrative remedies.

(4) Substantively, and applicable to tax years 1985-1986 through 1987-1988, Taxpayers contend the appropriate method of valuation in this case is the comparable sales method, as opposed to the band-of-investments method advocated by the City. We conclude the assessor's use of the band-of-investments method was not arbitrary, and was therefore proper. We also conclude that Taxpayers have failed to show the assessor's application of that method was erroneous.

(5) Finally, Taxpayers contend they are entitled to attorney fees under section 5152 and Government Code section 800. We have concluded that the AAB failed to comply with the two-year hearing requirement of section 1604, subdivision (c) with regard to tax years 1985-1986 and 1986-1987, and that this error requires reversal of the trial court's judgment in that respect. Because the error was the AAB's, Taxpayers are not entitled to attorney fees under section 5152. Taxpayers may be entitled to fees under Government Code section 800, however. We therefore remand to the trial court for further proceedings with respect to the issue of attorney fees.

## BACKGROUND

Taxpayers own a number of low-income housing projects in San Francisco. According to the parties, these projects qualify for subsidies under the federal National Housing Act (NHA) (12 U.S.C. § 1701 et seq.). They are commonly named "section 236" projects after that particular section of the NHA. Put simply, a developer of a section 236 project finances it by borrowing 90 or 100 percent of the development cost from a financial institution at market rates. The federal Department of Housing and Urban Development (HUD) guarantees the loan and pays all interest thereon in excess of 1 percent. In exchange, the developer agrees to provide housing at reduced rents for low-income families and individuals. The rents charged reflect the cost to amortize the low-interest loan plus reasonable operating expenses.

The dispute in this case concerns property taxes paid by Taxpayers for their various properties for the tax years 1982-1983 through 1987-1988.[3] Taxpayers timely filed applications for reduction in assessment for all or most of the properties for each tax year.[4] The assessed value of the properties implicated in the applications is almost $176.5 million. Taxpayers' opinion of the value of these properties amounted to a little over $20 million. The AAB conducted hearings on the applications on various dates between October 1988 and February 1989 after rescheduling the hearings from an initial hearing date of November 29, 1984. With few exceptions, the AAB denied the applications without changing the assessments.

Taxpayers subsequently filed claims for refund of property taxes with interest and attorney fees with the San Francisco Board of Supervisors. Taxpayers claimed the AAB utilized improper valuation methods and that the AAB failed to set the value of the properties in question at the values set forth in Taxpayers' applications for reduction in assessment, as required

---

[3]For Taxpayer Glenridge Apartments, Ltd., this case concerns only tax years 1984-1985 through 1987-1988. For Taxpayer Casa de la Raza, Inc., this case concerns only tax years 1986-1987 and 1987-1988.

[4]Taxpayer Buchanan Park, Ltd.'s application for tax year 1984-1985 is missing from the administrative record, but the City does not contend such application was not made. According to Taxpayers, they were not contesting the "base year" values of their properties, which value is set following a sale or construction of the particular property, but instead were alleging decreases in values below the base year values. The only exceptions are for those properties at issue that were sold during the pendency of the applications. For those properties, Taxpayers do in fact contest the base year values. In addition, with respect to Taxpayer St. Francis Square Apartments, Inc., whose property at issue is a low-income cooperative apartment, Taxpayers assert the county assessor failed to assess its value using the formula used to value similar properties in San Francisco.

under section 1604. The board denied Taxpayers' claims on the ground the AAB had already ruled on the issues raised by Taxpayers.

On June 22, 1990, Taxpayers initiated this action in San Francisco Superior Court seeking a tax refund plus interest, attorney fees, and costs. A court trial was held on October 5, 1995. On November 21, 1995, the trial court entered judgment in favor of the City. On June 21, 1996, the trial court denied Taxpayers' timely motion for new trial. Taxpayers timely appeal the trial court's judgment.[5]

## DISCUSSION

### I. *Exhaustion of Administrative Remedies*

We first address several threshold issues raised by the City as to whether Taxpayers exhausted their administrative remedies.

#### A. *Taxpayers Failed Timely to File Administrative Claims for Refund With Respect to All Taxes Paid With Respect to Tax Years 1982-1983, 1983-1984, and 1984-1985*

■ The City contends Taxpayers failed to file timely administrative claims for tax refund for all taxes paid prior to December 8, 1985. This would cover tax years 1982-1983 through 1984-1985. We agree.

Section 5097, subdivision (a) provides that "[n]o order for a refund under this article shall be made, except on a claim: [¶] . . . [¶] (2) Filed within four years after making of the payment sought to be refunded or within one year after the mailing of notice as prescribed in Section 2635, or the period agreed to as provided in Section 532.1, whichever is later."

Taxpayers filed their refund claims on December 8, 1989. They do not dispute that their refund claims for tax years 1982-1983 through 1984-1985 were filed more than four years after payment of all taxes for which those refunds were sought. The record also shows that Taxpayers' refund claims were filed more than four years after a November 5, 1985, payment for the Prince Hall property for tax year 1985-1986. They instead contend the AAB caused the delay by failing timely to adjudicate their applications for reduction in assessment. They contend they could not have filed their refund claims until the AAB ruled on their applications because to do so would

---

[5]In their notice of appeal, Taxpayers purport to include the trial court's order denying their motion for new trial. However, they fail to make any arguments specifically pertinent to that order in their briefs. We deem such failure to constitute a waiver of any issues pertinent to that order, and therefore affirm it without discussion. (*San Mateo County Coastal Landowners' Assn.* v. *County of San Mateo* (1995) 38 Cal.App.4th 523, 558-559 [45 Cal.Rptr.2d 117].)

have constituted a failure to exhaust their administrative remedies. The record shows that although Taxpayers filed timely applications for reduction in assessment for tax years 1982-1983 through 1984-1985, the AAB did not hold a hearing on those applications until late 1988 and early 1989, and did not issue a decision until May 1989.

Taxpayers cite no authority to support their position that they need not comply with the four-year limitations period under section 5097, subdivision (a) because they were awaiting a decision on their applications for reduction in assessment. The only authority we have found is section 5097, subdivision (b), which provides: "An application for a reduction in an assessment filed pursuant to Section 1603 shall also constitute a sufficient claim for refund under this section if the applicant states in the application that the application is intended to constitute a claim for refund. If the applicant does not so state, he or she may thereafter *and within the period provided in paragraph (2) of subdivision (a)* file a separate claim for refund of taxes extended on the assessment which applicant applied to have reduced pursuant to Section 1603 or 1604." (Italics added.) If anything, this provision suggests a taxpayer must file a refund claim within the four-year limitations period notwithstanding the filing of an application for reduction in assessment. Faced with this statutory language, we can only conclude that Taxpayers failed timely to file refund claims for tax years 1982-1983 through 1984-1985,[6] as well as for the November 5, 1985, payment for the Prince Hall property for tax year 1985-1986. We accordingly affirm the trial court's judgment with respect to those tax years.

B. *Taxpayers Otherwise Properly Exhausted Their Administrative Remedies*

■ The City also contends Taxpayers failed to exhaust their administrative remedies prior to bringing this court action. The City contends Taxpayers failed to file valid applications for reduction in assessment, as required by section 1603, subdivision (a), and failed to file properly verified claims for tax refund. Taxpayers contend the City waived its right to raise the exhaustion issue by failing timely to assert it at the trial level.

■ "Under the doctrine of exhaustion of administrative remedies, 'where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715].)" (*Park Area Neighbors* v. *Town*

---

[6] We note that Taxpayers might have avoided this problem if they had indicated that their applications for reduction in assessment would also serve as claims for refund.

of Fairfax (1994) 29 Cal.App.4th 1442, 1447 [35 Cal.Rptr.2d 334].) Taxpayers' contention raises the oft-debated issue of whether the exhaustion defense may be raised at any stage of the proceedings because the doctrine implicates the subject-matter jurisdiction of the courts, or whether the defense may be waived if not timely or properly raised because exhaustion is essentially a procedural requirement. (See *Wallis* v. *Farmers Group, Inc.* (1990) 220 Cal.App.3d 718, 735, fn. 10 [269 Cal.Rptr. 299]; *Park Area Neighbors* v. *Town of Fairfax, supra,* 29 Cal.App.4th at p. 1447, fn. 2.)

In *Green* v. *City of Oceanside* (1987) 194 Cal.App.3d 212 [239 Cal.Rptr. 470] (*Green*), the court concluded that the exhaustion defense may be waived if not properly raised. (*Id.* at pp. 219-223.) The court explained that the exhaustion doctrine "is 'jurisdictional' only in the sense that a court's failure to apply the rule in a situation where the issue has been properly raised can be corrected by the issuance of a writ of prohibition." (*Id.* at p. 222; see also *Azusa Land Reclamation Co.* v. *Main San Gabriel Basin Watermaster* (1997) 52 Cal.App.4th 1165, 1215-1216 [61 Cal.Rptr.2d 447]; *Wallis* v. *Farmers Group, Inc., supra,* 220 Cal.App.3d at pp. 735-736.) The *Green* court further stated: "We think it would be grossly unfair to allow a defendant to ignore this potential procedural defense at a time when facts and memories were fresh and put a plaintiff to the time and expense of a full trial, knowing it could assert the failure to exhaust administrative remedies if it received an adverse jury verdict. The exhaustion doctrine is simply a 'procedural prerequisite' . . . the City decided to forego. Having elected to put Green to his proof before a jury, the City's dissatisfaction with that result is an insufficient reason for reversal." (*Green, supra,* 194 Cal.App.3d at pp. 222-223, citation omitted.) Based on these authorities, we agree with Taxpayers that the defense of failure to exhaust administrative remedies may be waived if not properly or timely raised. We find the reasoning of the court in *Green* persuasive, and therefore conclude that the defense of failure to exhaust administrative remedies may be waived if not properly or timely raised.[7]

The City failed to raise either of the exhaustion issues in question as affirmative defenses in its answer to Taxpayers' complaint. In their complaint, however, which was unverified, Taxpayers alleged they (1) "timely

[7]The City cites *Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 84 [276 Cal.Rptr. 130, 801 P.2d 373] (*Rojo*) for the proposition that exhaustion is jurisdictional for actions brought on statutory grounds. *Rojo* involved claims brought under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). (*Rojo, supra,* 52 Cal.3d at p. 70.) Since the exhaustion requirement under FEHA has specifically been held to be jurisdictional and not procedural (see *Martin* v. *Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1724 [35 Cal.Rptr.2d 181]), *Rojo* is not controlling here.

filed verified applications for reductions of the assessments," and (2) "timely filed written verified claims for refund of tax." The City answered by generally denying all the allegations in the complaint, which was sufficient to put in issue all material allegations of the complaint. (Code Civ. Proc., § 431.30, subd. (d); see *Stenocord Corp.* v. *City etc. of San Francisco* (1970) 2 Cal.3d 984, 986 [88 Cal.Rptr. 166, 471 P.2d 966].)

We conclude nonetheless that the City's general denial of the first quoted allegation was not sufficient to raise the specific exhaustion issue they now raise, namely that Taxpayers failed to file *valid* applications for reassessment. The record shows the City did not raise this issue in any of its trial briefs or at the hearing before the trial court. Therefore, the City has waived it.

However, the City's general denial of the second allegation was sufficient to raise the issue of whether Taxpayers' refund claims were properly *verified*. Furthermore, the record shows the City argued this issue extensively in its opening trial brief, that Taxpayers responded to this contention at length in their reply trial brief, and that the issue was debated extensively at the hearing before the trial court. Since the City properly and timely raised this issue, we proceed to consider the merits of the City's contention.

C. *Although Taxpayers' Refund Claims Were Not Properly Verified, That Defect Is Not Fatal to Their Claims*

█ The City contends Taxpayers' refund claims are invalid because the required verification was improperly signed by Taxpayers' attorney. The verification is indeed defective but, as we shall explain, we conclude the defect is not fatal to Taxpayers' claims.

"Section 5097 provides for the refund of improperly collected property taxes based on a claim that is: '(1) *Verified by the person who paid the tax, his or her guardian, executor, or administrator. . . .*' (Rev. & Tax. Code, § 5097.) If a claim, filed pursuant to section 5097, is denied, a suit to recover the improperly collected taxes may be brought pursuant to section 5140, which provides that the suit may be brought by '[t]he person who paid the tax, his or her guardian or conservator, the executor of his or her will, or the administrator of his or her estate . . . .' That statute also provides that '[n]o other person may bring such an action; but if another should do so, judgment shall not be rendered for the plaintiff.' (Rev. & Tax. Code, § 5140.)" (*Neecke* v. *City of Mill Valley* (1995) 39 Cal.App.4th 946, 962 [46 Cal.Rptr.2d 266], (*Neecke*), italics added.)

Taxpayers filed their refund claims in a letter dated December 8, 1989, and addressed to the San Francisco Board of Supervisors. The letter contains

the following verification: "We declare under penalty of perjury that to the best of our knowledge and belief the amount claimed and the facts set forth herein are true and correct, that no part of the amounts claimed has heretofore been refunded and that Claimants are the persons entitled to refund pursuant to Rev. & Tax. Code Section 5096." The letter is signed on behalf of all Taxpayers by Robert S. Beach as their attorney.

We address first Taxpayers' claim that their attorney may properly verify the refund claim on their behalf under *Easton* v. *County of Alameda* (1937) 9 Cal.2d 301 [70 P.2d 640] (*Easton*). Taxpayers' reliance on that case is misplaced. In *Easton*, the County of Alameda denied a claim made by an owner of an office building for refund of taxes that were in fact paid by his lessee. The California Supreme Court noted that the refund claims had been verified by the claimant's attorney-in-fact. (*Id.* at p. 302.) Taxpayers quote the beginning portion of the Supreme Court's next sentence as holding that an attorney may properly sign the verification for the taxpayer: "Concededly these claims were in the form required . . . ." (*Ibid.*) The Supreme Court stated in full, however: "Concededly these claims were in the form required and they were filed within the time fixed by section 3804 of the Political Code *with the exception that the respondents insist the verification may only be made by the claimant himself.*" (*Ibid.*, italics added.) In our view, the italicized portion of the quoted sentence indicates that the issue of whether the claimant's attorney-in-fact properly signed the verification remained open. Since the Supreme Court did not further address the question, we conclude they did not decide it.

We also reject Taxpayers' assertion that their attorney properly verified the refund claim because he is their authorized agent. Although as a general proposition we agree with Taxpayers that an attorney may be deemed an agent for his or her client, we are not persuaded that such status automatically allows an attorney to *verify* a claim for tax refund under section 5097. The plain language of section 5097 simply does not contemplate verification by a taxpayer's agent. In the case of a corporation, Code of Civil Procedure section 446, subdivision (a) provides that only an *officer* of the corporation may make a verification on the corporation's behalf. There is no evidence in this case that Mr. Beach was an officer of any of the Taxpayers.

As we discuss later in this opinion, however, an attorney may make a verification on behalf of his or her client under certain limited circumstances. (See Code Civ. Proc., § 446.) We therefore turn to the City's contention that only the taxpayer may sign the verification because strict compliance with the procedures for bringing tax refund claims is required,

citing *Neecke, supra,* 39 Cal.App.4th at page 961 and *Woosley* v. *State of California* (1992) 3 Cal.4th 758, 790-793 [13 Cal.Rptr.2d 30, 838 P.2d 758].

The court in *Neecke,* discussing *Woosley,* indeed spoke in terms of requiring strict compliance with the administrative procedures established by the Legislature for tax refund claims: "[T]he Supreme Court reasoned that, because the California Constitution vests the Legislature with plenary control over the manner in which tax refunds may be obtained (Cal. Const., art. XIII, § 32), a taxpayer must show strict, rather than substantial, compliance with the administrative procedures established by the Legislature. . . ." (*Neecke, supra,* 39 Cal.App.4th at p. 961, citation omitted.)

The pertinent issue in both *Neecke* and *Woosley,* however, was one of standing, i.e., whether the plaintiffs in those cases could maintain class actions under the applicable tax code provisions. (See *Neecke, supra,* 39 Cal.App.4th at pp. 960-965; *Woosley* v. *State of California, supra,* 3 Cal.4th at pp. 790-793.) Because nothing in the tax code authorized such class actions (see *Neecke, supra,* 39 Cal.App.4th at pp. 961-962; *Woosley* v. *State of California, supra,* 3 Cal.4th at pp. 792-793), the courts in those cases logically and reasonably held that the plaintiffs failed to comply with the applicable tax refund procedures.

In contrast, there is no dispute here that Taxpayers are the persons authorized to seek a refund of the taxes at issue or that Taxpayers' attorney included a purported verification in the refund claim. As the City does not contend Taxpayers' refund claim is flawed in substance,[8] the City's objection to the verification boils down to one of form.

We turn for guidance to Code of Civil Procedure section 446, subdivision (a), which governs the subject of verified pleadings. Under section 446, an attorney may verify a pleading for a client if the client is absent from the county in which the attorney has his or her office or is otherwise unable to make the verification. The attorney should state why the client was unable personally to verify the pleading, that he or she has read the pleading, and "that he or she is informed and believes the matters therein to be true and on that ground alleges that the matters stated therein are true." (Code Civ. Proc., § 446, subd. (a).)

Here, the verification by Taxpayers' attorney is plainly inadequate under Code of Civil Procedure section 446, subdivision (a). Nor does it state the

---

[8]The City admitted during discovery "that no refund of any taxes at issue in this litigation or any part thereof has been paid to any of plaintiffs or anyone acting on their behalf," and "that Plaintiffs are the entitites [*sic*] which paid the property taxes on the respective parcels for the fiscal years in question."

date and place of execution as required under Code of Civil Procedure section 2015.5.[9]

The absence of the required information, however, does not necessarily render Taxpayers' refund claim fatally defective. In *Soltani-Rastegar* v. *Superior Court* (1989) 208 Cal.App.3d 424 [256 Cal.Rptr. 255], Division Three of this court granted a petition for writ of mandate that was verified by the petitioner's attorney instead of the petitioner. Division Three expressly rejected this defect as a ground for denying the petition, holding that the failure of the attorney to explain in his verification why he and not his client verified the petition was a defect in form not affecting the substance of the petition. (*Soltani-Rastegar* v. *Superior Court, supra,* 208 Cal.App.3d at p. 428.)

Moreover, Taxpayers' attorney's failure to state explicitly that he had read the refund claim, that he was informed and believed the matters therein to be true and on that ground alleged that the matters stated therein are true is not dispositive. Generally, " '[t]he object of a verification is to assure good faith in the averments or statements of a party . . . .' . . . Where . . . there is no allegation of counsel's bad faith, a claim of inadequate verification is without merit. . . ." (*League of Women Voters* v. *Eu* (1992) 7 Cal.App.4th 649, 656 [9 Cal.Rptr.2d 416], citations omitted.) Here, the City does not contend Taxpayers' attorney verified their refund claims in bad faith. In addition, the purpose of a claim of refund is to "provide[] the state with official notice that a taxpayer will make a claim for moneys paid to the treasury. Because the refund claim must state 'the specific grounds upon which it is founded' ([former] § 26074), the claim of refund allows the state to evaluate the merits of the taxpayer's claim and to plan fiscal policy accordingly." (*Shiseido Cosmetics (America) Ltd.* v. *Franchise Tax Bd.* (1991) 235 Cal.App.3d 478, 489 [286 Cal.Rptr. 690].) Nothing in the record indicates that the defective verification of Taxpayers' claims has negated the purpose of the claims.

Finally, Taxpayers' attorney's failure to recite that the verification was executed under the laws of the State of California or to state the date and

[9]Code of Civil Procedure section 2015.5 provides in pertinent part: "Whenever . . . any matter is required or permitted to be supported, evidenced, established, or proved by the sworn statement, declaration, verification, certificate, oath, or affidavit, in writing of the person making the same . . . such matter may with like force and effect be supported, evidenced, established, or proved by the unsworn statement, declaration, verification, or certificate, in writing of such person which recites that it is certified or declared by him or her to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California."

place of execution is harmless. (*People* v. *Flores* (1995) 37 Cal.App.4th 1566, 1572-1576 [44 Cal.Rptr.2d 585].) Here, it fairly can be said that the verification was executed on the date stated on the refund claim, and that the attorney's letterhead indicating a California address indicates sufficiently that the verification was executed in and under the laws of the State of California. (See *ibid.*)

D. *The Evidence in the Record Establishes That Taxpayer Glenridge Apartments, Ltd. Appealed Its Assessments for Tax Years 1986-1987 and 1987-1988 to the AAB*

The City contends Taxpayers failed to appeal to the AAB regarding the Glenridge Apartments assessments for tax years 1986-1987 and 1987-1988. Taxpayers respond that Glenridge appealed its base-year valuation to the AAB based on the sale of Glenridge in 1985, and that the City admitted all parties properly appealed for each tax year in question. The record shows Glenridge appealed to the AAB for tax years 1983-1984 through 1985-1986. Although there is no direct evidence that Glenridge appealed to the AAB for tax years 1986-1987 and 1987-1988, the record shows the City made the admission asserted by Taxpayers. The City claims Taxpayers obtained this admission because of confusion that arose when the attorney who originally represented the City retired and the City's present attorney took over the case. The record, however, contains no indication that the City attempted to withdraw the admission as erroneous. In light of this admission, we can only conclude that the evidence establishes that Glenridge in fact appealed to the AAB for the tax years 1986-1987 and 1987-1988.

II. *Standard of Review*

Taxpayers spend a considerable portion of their brief discussing the standard of review we must apply. As was well-stated by the court in *Shell Western E & P, Inc.* v. *County of Lake* (1990) 224 Cal.App.3d 974 [274 Cal.Rptr. 313]: "The California Constitution specifies that '[t]he county board of supervisors, or . . . assessment appeals boards created by the county board of supervisors, shall constitute the county board of equalization' with the duty to 'equalize the values of all property on the local assessment roll by adjusting individual assessments.' (Cal. Const., art. XIII, § 16.) Accordingly, 'while sitting as a board of equalization, the county board of supervisors is a constitutional agency exercising quasi-judicial powers delegated to the agency by the Constitution' (*Westlake Farms, Inc.* v. *County of Kings* (1974) 39 Cal.App.3d 179, 185 [114 Cal.Rptr. 137]) with 'special expertise in property valuation.' (*Westinghouse Elec. Corp.* v.

*County of Los Angeles* (1974) 42 Cal.App.3d 32, 42, fn. 6 [116 Cal.Rptr. 742].) In light of the semijudicial status of local boards, 'their factual determinations are entitled on appeal to the same deference due a judicial decision, i.e., review under the substantial evidence standard.' (*Cochran* v. *Board of Supervisors* (1978) 85 Cal.App.3d 75, 80 [149 Cal.Rptr. 304].) Early statements that factual findings made by local boards are 'final and conclusive' (*Universal Cons. Oil Co.* v. *Byram* (1944) 25 Cal.2d 353, 362 [153 P.2d 746]; accord *Flying Tiger Line, Inc.* v. *County of L. A.* (1958) 51 Cal.2d 314, 321-322 [333 P.2d 323]) have been supplanted by the substantial evidence test that tolerates a very limited reweighing of the evidence heard by the local board. (See *Bret Harte Inn, Inc.* v. *City and County of San Francisco* (1976) 16 Cal.3d 14, 22-23 [127 Cal.Rptr. 154, 544 P.2d 1354]; *County of San Diego* v. *Assessment Appeals Bd. No. 2* (1983) 148 Cal.App.3d 548, 554-555 [195 Cal.Rptr. 895].) [¶] On the other hand, courts are authorized to conduct an independent reassessment 'when a board of equalization purports to decide a question of law.' (*Board of Supervisors* v. *Archer* (1971) 18 Cal.App.3d 717, 724 [96 Cal.Rptr. 379]; accord *Georgia-Pacific Corp.* v. *County of Butte* (1974) 37 Cal.App.3d 461, 474 [112 Cal.Rptr. 327].) A board's 'arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature' are legal matters subject to judicial correction. (See *De Luz Homes, Inc.* v. *County of San Diego* (1955) 45 Cal.2d 546, 564 [290 P.2d 544]; accord *Bret Harte Inn, Inc.* v. *City and County of San Francisco, supra,* 16 Cal.3d 14 at p. 22.) Finally, interpretation of statutes and administrative regulations are quintessential issues of law. (See *Delta Air Lines, Inc.* v. *State Bd. of Equalization* (1989) 214 Cal.App.3d 518, 525 [262 Cal.Rptr. 803].)" (*Shell Western E & P, Inc.* v. *County of Lake, supra,* 224 Cal.App.3d at pp. 979-980.)

In addition, "[w]here a taxpayer challenges the validity of the valuation method used by an assessor, the trial court must determine as a matter of law 'whether the challenged method of valuation is arbitrary, in excess of discretion, or in violation of the standards prescribed by law.' [Citation.] Our review of such a question is de novo. [Citation.] By contrast, where the taxpayer challenges the application of a valid valuation method, the trial court must review the record presented to the Board to determine whether the Board's findings are supported by substantial evidence but may not independently weigh the evidence. [Citations.] This court, too, reviews a challenge to application of a valuation method under the substantial evidence rule. [Citation.]" (*Freeport-McMoran Resource Partners* v. *County of Lake* (1993) 12 Cal.App.4th 634, 640 [16 Cal.Rptr.2d 428].)

III. *Section 1604*

Applicable to tax years 1983-1984 through 1986-1987, Taxpayers contend for several reasons that, pursuant to section 1604 and Real Property Tax

Rules, rule 309 (Cal. Code Regs., tit. 18, § 309, hereafter rule 309), the opinions of value they included on their applications for reduction in assessment must govern for those years because the AAB failed to hear and decide their applications within two years after the applications were filed. Since we have already affirmed the trial court's judgment with respect to tax years 1982-1983 through 1984-1985 on another ground, this contention affects only tax years 1985-1986 and 1986-1987. Because Taxpayers' contention has merit, we reverse the trial court's judgment with respect to those tax years.

Section 1604, subdivision (c) provides that "[i]f the county assessment appeals board fails to hear evidence and fails to make a final determination on the application for reduction in assessment of property within two years of the timely filing of the application, the taxpayer's opinion of market value as reflected on the application for reduction in assessment shall be the value upon which taxes are to be levied for the tax year covered by the application, unless either of the following occurs: [¶] (1) The taxpayer and the county assessment appeals board mutually agree in writing, or on the record, to an extension of time for the hearing. [¶] (2) The application for reduction is consolidated for hearing with another application by the same taxpayer with respect to which an extension of time for the hearing has been granted pursuant to paragraph (1). . . . [¶] The reduction in assessment reflecting the taxpayer's opinion of market value shall not be made, however, until two years after the close of the filing period during which the timely application was filed. Further, this subdivision shall not apply to applications for reductions in assessments of property where the taxpayer has failed to provide full and complete information as required by law or where litigation is pending directly relating to the issues involved in the application. This subdivision is only applicable to applications filed on or after January 1, 1983."

Consistent with section 1604, rule 309 (Cal. Code Regs., tit. 18, § 309)[10] provides, in pertinent part: "(b) For applications filed on or after January 1, 1983, the hearing must be held and a final determination made within two years of the timely filing of an application for reduction in assessment submitted pursuant to subdivision (a) of Section 1603 of the Revenue and Taxation Code, unless the taxpayer and the county assessment appeals board mutually agree in writing to an extension of time. [¶] (c) If the hearing is not held and a determination is not made within the time specified in subdivision (b) of this section, the applicant's opinion of value stated in the application

---

[10]Rule 309 was promulgated pursuant to section 1604. (See Note, Cal. Code Regs., tit. 18, § 309, p. 28.)

shall be conclusively determined by the board to be the basis upon which property taxes are to be levied, except when: [¶] (1) The applicant has not filed a timely and complete application; or, [¶] (2) The applicant has not submitted a full and complete property statement as required by law with respect to the property which is the subject of the application; . . . . [¶] . . . [¶](e) The applicant shall not be denied a timely hearing and determination pursuant to subdivision (b) of this section, by reason of any of the exceptions enumerated in subdivisions (c)(1), (c)(2), (c)(3), or (c)(4) herein, unless, within two years of the date of the application, the board gives the applicant written notice of such denial. The notice shall indicate the basis for the denial and inform the applicant of his or her right to protest the denial at the time of the hearing on his application. . . . ." (Rule 309, subds. (b), (c), & (e).)

A. *The City Failed to Plead as an Affirmative Defense Either That Taxpayers Waived the Two-year Hearing Requirement Under Section 1604 or That Taxpayers Are Estopped From Asserting the Two-year Hearing Requirement and, Therefore, May Not Rely on Those Defenses*

■ Preliminarily, the City contends Taxpayers waived the two-year hearing requirement of section 1604, subdivision (c) and that Taxpayers are estopped from asserting that requirement. ■ " '[T]he law is settled that waiver is an affirmative defense and a defendant relying thereon must set it up in his answer.' . . ." (*Williams* v. *Marshall* (1951) 37 Cal.2d 445, 456 [235 P.2d 372], citations omitted.) The same is true with respect to the defense of estoppel. (*In re Marriage of Hanley* (1988) 199 Cal.App.3d 1109, 1121 [245 Cal.Rptr. 441] [citing 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1044, p. 460]; disagreed with on other grounds, *Leadford* v. *Leadford* (1992) 6 Cal.App.4th 571, 575, fn. 5 [8 Cal.Rptr.2d 9].) The City need not have used the term "estoppel," but must at least have set forth the circumstances giving rise to the purported estoppel. (*In re Marriage of Hanley, supra,* 199 Cal.App.3d at p. 1121.)

■ Here, the City did not plead either waiver or estoppel as an affirmative defense in its answer. Thus, the City may not now rely on those defenses.

At oral argument, the City attempted to avoid this result by claiming that the AAB found that Taxpayers either waived or were estopped from asserting the two-year hearing requirement. Moreover, the City argues that it was not required to plead these issues as defenses, because it was defending the AAB findings. The AAB, however, made no such finding in its findings of

fact and conclusions of law. We decline to give informal statements that may have been made by the AAB during the hearing the same effect as formal findings of fact, as the City apparently urges, when those statements are not memorialized in the AAB's formal findings.

B. *With Respect to Tax Years 1985-1986 and 1986-1987, the City Failed to Provide Written Notice to Taxpayers That It Would Not Hold a Hearing on Taxpayers' Applications for Reduction in Assessment Within Two Years or the Reasons Therefor*

■ "The purpose of section 1604 is to assure a prompt resolution of applications for reduction of assessments. [Citation.] The section is designed to prevent bureaucratic delay and forestalling of the return of taxpayer's money, by providing a significant disincentive for a taxing authority to delay resolution of the case." (*United Enterprises, Ltd.* v. *Assessment Appeals Bd.* (1994) 22 Cal.App.4th 152, 159 [27 Cal.Rptr.2d 279].)

"Section 1604(c) is . . . explicit with respect to 'the nature and character of the act to be done, and . . . the consequences which [will] follow the . . . failure to do the particular act at the required time.' . . . The statute explicitly states what shall be done to remedy undue delay. The presence of such an enforcement mechanism is further evidence that section 1604(c) goes beyond directory to mandatory. . . . The sanction for noncompliance so well delineated goes past 'secur[ing] the orderly conduct of business' or designating ' "a guide in orderly proceedings" ' . . . and amounts to the withdrawal of a board's power to proceed otherwise. . . . The existence of the sanction comports with the general approach to the tax-exaction system: 'As any tax proceeding is *in invitum* in nature . . . each step must be taken in compliance with law or the proceeding is void. The equalization stage is no exception to this rule.' " (*Shell Western E & P, Inc.* v. *County of Lake, supra,* 224 Cal.App.3d at p. 984, citations omitted.)

■ It is undisputed that the AAB never sent Taxpayers a written notice informing them that a timely hearing on Taxpayers' applications for reduction in assessment would not be held and the reason therefor as required by rule 309, subdivision (d). (Cal. Code Regs., tit. 18, § 309, subd. (d).) Although the AAB stated in its findings of fact and conclusions of law that "[a]ll notices were duly given as required by law," there is no evidence that any notices were sent pursuant to rule 309. It therefore seems inescapable that Taxpayers' opinions of the values of the subject properties should be the values upon which their property taxes should be levied.

We note that the Second Appellate District in *International Medication Systems, Inc.* v. *Assessment Appeals Bd.* (1997) 57 Cal.App.4th 761 [67

Cal.Rptr.2d 394] reached a similar conclusion in interpreting the notice provision of section 1605.6. In *International Medication Systems*, the taxpayer's application for a reduction in assessment was one of many applications which the county AAB found were nearly two years old, but had not yet been set for hearing in accordance with section 1604. Accordingly the AAB issued a notice of hearing, but did so on less than the 45 days' notice required by section 1605.6. The trial court denied the taxpayer's petition for writ of mandate seeking an order compelling the AAB to set aside its decision denying the taxpayer's application, and entry of the taxpayer's opinion as to the value of the assessed property.

The court in *International Medications Systems* concluded the notice provisions of section 1605.6 were mandatory, not merely directory, and set forth a constitutional due process requirement to afford the taxpayer notice and the opportunity to be heard. (*International Medication Systems, Inc. v. Assessment Appeals Bd.*, supra, 57 Cal.App.4th at p. 767, citing *Universal Cons. Oil Co. v. Byram* (1944) 25 Cal.2d 353, 361 [153 P.2d 746].) As a consequence of the AAB's failure to comply with the mandatory notice provision, the appeals court directed the trial court to issue the peremptory writ.

Here the City attempts to avoid this conclusion by contending that section 1604 does not apply in this case because Taxpayers' applications for reduction in assessment did not provide "full and complete information." The City contends that section 1604 does not require written notice, and that Taxpayer's failure to provide "full and complete information" is enough to prevent the default.

Rule 309, subdivision (d), however, clearly and unambiguously sets forth the written notice requirement. (See rule 309, subd. (d).) Thus, even if Taxpayers had failed to provide "full and complete" information in their applications, the AAB was still required to provide written notice stating that a timely hearing would not be held for that reason. (Rule 309, subd. (d).)

The City claims the AAB had no way to know Taxpayers' applications were incomplete until Taxpayers' counsel admitted at the hearing before the AAB that the values were arbitrary low numbers. In this regard, we note that the trial court, in denying Taxpayers' motion for new trial, stated that the AAB "found that plaintiffs['] applications lacked information supporting plaintiffs' opinion of value—information regularly provided by other applicants. Although plaintiffs may be correct in their position that the supporting information sought by the Board is not information required by section 1604(c), the plaintiff has admitted that the opinions of value on the applications were only 'low number[s].' Such an admittedly arbitrary statement of

value, without any initial attempt at a good faith valuation, cannot be what the [L]egislature intended by section 1604(c)'s requirement that the applicant provide 'full and complete information as required by law.' "

Notwithstanding the trial court's legitimate concerns, it is apparent from the record that the AAB objected to the *absence* of additional information that would support Taxpayers' values, information that, according to the AAB, other taxpayers routinely provided. In our view, the *absence* of such information should have alerted the AAB that Taxpayers' applications did not provide full and complete information. The AAB could have informed Taxpayers in writing that such additional information was necessary, and thereby avoided the effect of section 1604, subdivision (c). Because the AAB failed to take this procedural step, Taxpayers were entitled to have their property taxes levied based on the opinions of value stated in their applications for reduction in assessment.

Finally, we reject the City's argument that section 1604 does not apply to the supplemental or escape assessments that are involved in this case. The plain language of section 1604 does not exclude applications for reduction of supplemental or escape assessments from its operation. In addition, the only pertinent case we are aware of *upheld* the application of section 1604 to a reassessment resulting from a change in ownership. (See *United Enterprises, Ltd.* v. *Assessment Appeals Bd., supra*, 22 Cal.App.4th at pp. 156, 159-160.) As the City acknowledges, a reassessment resulting from a change in ownership is a supplemental assessment. (See § 75.11.)

### C. *Section 1604, Subdivision (c) Is Constitutional*

The City contends for several reasons that section 1604, subdivision (c) is unconstitutional. Having resolved all other issues regarding the application of section 1604, subdivision (c) in favor of Taxpayers, we now consider the City's contention. (See *Shell Western E & P, Inc.* v. *County of Lake, supra*, 224 Cal.App.3d at p. 978.)

We first dispose of Taxpayers' argument that the City may not question the constitutionality of section 1604, subdivision (c) because the City failed timely to raise this question below. Taxpayers are generally correct that questions regarding the constitutionality of a statute should be raised at the earliest opportunity. (*Hershey* v. *Reclamation District No. 108* (1927) 200 Cal. 550, 564 [254 P. 542].) As Taxpayers observe, however, the City raised this issue in its opening trial brief below. We consider this sufficient, and therefore find the City has not waived its right to raise this constitutional issue.

We start with the well-settled proposition that " '[i]n considering the constitutionality of a legislative act we presume its validity, resolving all

doubts in favor of the Act. Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the Act. . . .' . . ." (*County of Sonoma* v. *State Energy Resources Conservation etc. Com.* (1985) 40 Cal.3d 361, 368 [220 Cal.Rptr. 114, 708 P.2d 693], citations omitted; *Rains* v. *Belshé* (1995) 32 Cal.App.4th 157, 170 [38 Cal.Rptr.2d 185].) The party challenging the constitutionality of a statute bears the burden of proving it unconstitutional. (*Rains, supra,* at p. 170.) ▆▆▆ For the reasons that follow, we conclude that the City has failed to carry its burden of proving section 1604, subdivision (c) unconstitutional.

### 1. *Section 1604, Subdivision (c) Does Not Violate the Constitutional Requirement That Assessment Appeals Boards Determine Assessed Value*

The City contends section 1604, subdivision (c) is unconstitutional because it violates the constitutional requirement that assessment appeals boards determine assessed value. The City contends section 1604, subdivision (c) is an attempt by the Legislature to divest the AAB of its constitutional duty by allowing the taxpayer's opinion of value to control upon the failure of an assessment appeals board to hold a timely hearing. We disagree.

Article XIII, section 16 of the California Constitution indeed provides that "the county board of equalization, under such rules of notice as the county board may prescribe, shall equalize the values of all property on the local assessment roll by adjusting individual assessments." We agree, moreover, that the Legislature may not change the meaning of a provision in the constitution by legislation. (See *Nunes Turfgrass, Inc.* v. *County of Kern* (1980) 111 Cal.App.3d 855, 862-863 [168 Cal.Rptr. 842].)

The City ignores, however, the plain language of section 1604. Section 1604, subdivision (d) provides that "[i]f, pursuant to subdivision (c), the applicant's opinion of value has been placed on the assessment roll, that value shall remain on the roll until the county board makes a final determination on the application. The value so determined by the county board, plus appropriate adjustments for the inflation factor, shall be entered on the assessment roll for the fiscal year in which the value is determined. . . ." This unambiguous language makes clear that, notwithstanding section 1604, subdivision (c), the board retains both the power and the duty to determine assessed value.[11]

---

[11]The City also cites *Hunt-Wesson Foods, Inc.* v. *County of Alameda* (1974) 41 Cal.App.3d 163 [116 Cal.Rptr. 160] as authority for the proposition that the Legislature does not have the power to allow a superior court to reweigh the evidence presented to an assessment appeals

## 2. Section 1604, Subdivision (c) Does Not Violate the Constitutional Requirement of Separation of Powers

The City also contends section 1604, subdivision (c) violates the constitutional mandate of separation of powers. We disagree.

Article III, section 3 of the California Constitution provides that "[t]he powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." A county assessment appeals board is a constitutional agency exercising quasi-judicial powers delegated to it by the constitution. (*Shell Western E & P, Inc.* v. *County of Lake, supra,* 224 Cal.App.3d at p. 979.)

In *Brydonjack* v. *State Bar* (1929) 208 Cal. 439 [281 P. 1018, 66 A.L.R. 1507], the California Supreme Court stated: "Our courts are set up by the Constitution without any special limitations; hence the courts have and should maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government. [Citations.] But this does not mean that the three departments of our government are not in many respects mutually dependent. Of necessity the judicial department as well as the executive must in most matters yield to the power of statutory enactments. [Citations.] The power of the [L]egislature to regulate criminal and civil proceedings and appeals is undisputed." (*Id.* at pp. 442-443.)

"[T]he [L]egislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions." (*Brydonjack* v. *State Bar, supra,* 208 Cal. at p. 444.) Thus , the Legislature has enacted a complex procedural scheme to govern equalization proceedings. (See, e.g., § 1601 et seq. [prescribing procedures for equalization by county board of equalization]; Gov. Code, § 15606 [setting forth powers and duties of State Board of Equalization].)

The City argues that the effect of section 1604, subdivision (c) is analogous to a statute that requires a trial court to enter a judgment for the plaintiff if the court fails to render a judgment within a specified period of time after the filing of the complaint. This is too simplistic.

We note first that in *Napa Savings Bank* v. *County of Napa* (1911) 17 Cal.App. 545 [120 P. 449], the court held that an assessment order by the

---

board. Any statement to that effect in *Hunt-Wesson Foods, Inc.,* however, is dicta. (See *id.* at p. 172 [stating that even if the statute at issue in that case could be interpreted in the manner suggested, "such interpretation *may* be an unconstitutional delegation of powers by the Legislature 'insofar as it purported to authorize the superior court to reweigh the evidence.' . . ." (italics added; citations omitted)].)

county board of equalization was void for want of jurisdiction because the order was not made within the time prescribed by the Legislature for such acts. (*Id.* at p. 548 [applying former Political Code sections 3672 and 3705].) Although in that case there was no issue concerning the constitutionality of the statutes, we find the opinion persuasive with respect to the extent of the Legislature's power to regulate equalization proceedings.

Furthermore, as we discussed in part III.C.1., *ante*, under section 1604, subdivision (d), an assessment appeals board is bound to determine the assessed value of a particular property even after the taxpayer's opinion of value is inserted in the assessment roll. The taxpayer's opinion of value stays on the roll only until the assessment appeals board exercises its duty to determine the assessed value of the property in question. (See § 1604, subd. (d).) Because the quasi-judicial function exercised by the assessment appeals board is not defeated or materially impaired by section 1604, subdivision (c), the statute does not violate the separation of powers clause.[12]

### 3. *Section 1604, Subdivision (c) Does Not Violate the Equal Taxation Provision of the Constitution*

The City also contends section 1604, subdivision (c) violates the equal taxation provision of the California Constitution. Again, we disagree.

Article XIII, section 1, subdivision (a) of the California Constitution provides that, "[u]nless otherwise provided by this Constitution or the laws of the United States: [¶] (a) All property is taxable and shall be assessed at the same percentage of fair market value. When a value standard other than fair market value is prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value. The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value."

In *McClelland* v. *Board of Supervisors* (1947) 30 Cal.2d 124 [180 P.2d 676], the California Supreme Court stated with respect to former section 1 of

---

[12]*McHugh* v. *Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348 [261 Cal.Rptr. 318, 777 P.2d 91], cited by the City in support of its argument, is inapposite. The issue in that case was whether the Santa Monica Rent Control Board had exercised judicial powers in violation of the judicial powers clause of the California Constitution. (See Cal. Const., art. VI, § 1.) The separation of powers clause was not at issue. In addition, the Santa Monica Rent Control Board was not an administrative agency endowed with judicial powers under the Constitution. Instead, its actions were taken pursuant to a charter amendment to the Santa Monica City Charter. (*McHugh, supra,* 49 Cal.3d at pp. 352-353, 356.)

article XIII of the California Constitution that " 'the taxpayer is entitled to . . . the exercise of good faith and fair consideration on the part of the taxing power in assessing his property, at the same rate and on the same basis of valuation as that applied to other property of like character and similarly situated. Inequality of taxation is produced as surely by inequality of valuation as by inequality of the rate of tax.' . . ." (*Id.* at pp. 128-129, citations omitted.)

The City contends section 1604, subdivision (c) violates the constitutional principle of uniformity of taxation because it would allow Taxpayers' property to be assessed at less than fair market value. Even if this is true, article XIII, section 1 itself contemplates that different value standards may be set by statute. (Cal. Const., art. XIII, § 1, subd. (a); *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813, 822-823 [164 Cal.Rptr. 739].) Section 1604, subdivision (c) does just that; it mandates that the value of a taxpayer's property shall be the taxpayer's opinion of value in the event an assessment appeals board fails timely to hold an assessment hearing.[13]

4. *Application of Section 1604, Subdivision (c) Does Not Result in an Unconstitutional Partial Tax Exemption for Taxpayers*

The City's final contention regarding the constitutionality of section 1604, subdivision (c) is that it results in the creation of a partial tax exemption in violation of the California Constitution. Once again, we disagree.

Article XIII, section 4 of the California Constitution sets forth the types of property the Legislature may exempt from property taxes. (Cal. Const., art. XIII, § 4.) The Legislature may not exempt any other types of property from taxation. (*Connolly* v. *County of Orange* (1992) 1 Cal.4th 1105, 1119, fn. 14 [4 Cal.Rptr.2d 857, 824 P.2d 663].)

The problem with the City's argument is the underlying premise, namely, that Taxpayers' property in this case will not be fully taxed. Under section 1604, subdivision (c), the value of Taxpayers' property in this case will be shown on the assessment roll according to Taxpayers' opinion of value, at least for the tax years in which the AAB failed to hold the required hearing. Presumably, Taxpayers will be taxed for the affected years by applying the prevailing tax rate to the full amount of that value. The City does not

---

[13]We note that the City's argument impliedly assumes that a taxpayer's opinion of value will always be less than fair market value. This may or may not be true, based on the evidence presented at the assessment hearing.

contend otherwise. We are not persuaded that because Taxpayers' opinion of the value of their property might prove less than the AAB determines, they are in effect receiving a tax exemption.

## IV. *The Applicable Method of Valuation*

There are three generally accepted methods of valuation for property tax purposes: the comparable sales method, the income capitalization method, and the cost method. (2 Ehrman & Flavin, Taxing Cal. Property (3d ed. 1997) § 17:10, p. 22.) The parties do not dispute that the proper valuation method for Taxpayers' properties is the income capitalization method. Indeed, Taxpayers submitted voluminous evidence to the AAB using that method of valuation.

"The income method is a means of valuation that converts income into an estimate of value. The conversion is accomplished by capitalizing the income. . . . The value of the property is the sum of the anticipated future installments of net income, less an allowance for interest and the risk of partial or no receipt of income." (2 Ehrman & Flavin, Taxing Cal. Property, *supra*, § 17:15, p. 34.) "In order to convert future income into present value, a discount factor or capitalization rate is applied. The discount factor or rate reflects interest, the risk of no return or a lesser return of income, liquidity, investment management, taxes and depreciation, where appropriate." (*Id.,* § 17.19, pp. 44-45.)

There are several different methods of deriving the applicable capitalization rate. The two at issue in this case are the comparable sales method, urged by Taxpayers, and the band-of-investments method advocated by the City. These methods have been described as follows: "The assessor may determine the capitalization rate by utilization of data from comparable sales (the market derived rate) or by deriving a weighted average of capitalization rates for debt and for equity capital of comparable properties (the investment band method)." (Crawford et al., 1 Cal. Taxes (Cont.Ed.Bar 1996) Property Taxes, § 1.103, p. 103.)

The specific issues raised by Taxpayers regarding valuation are (1) the assessor's use of the band-of-investments method to determine the applicable capitalization rate was arbitrary, and (2) the assessor incorrectly applied the income method of valuation. This issue affects only tax years 1985-1986 through 1987-1988.

### A. *Taxpayers' Burden of Proof*

█ "The law presumes that the assessor has properly performed his duty and has assessed all properties fairly and upon an equal basis. The

effect of this presumption is to impose upon the applicant the burden of proving that the property in question has not been correctly assessed. The law requires that the applicant proceed to present independent evidence relevant to the full value of the property. . . ." (Real Property Tax Rules, rule 321, subd. (a) (Cal. Code Regs., tit. 18, § 321); see also *Shubat* v. *Sutter County Assessment Appeals Bd.* (1993) 13 Cal.App.4th 794, 806 [17 Cal.Rptr.2d 1].) In addition, section 1610.8 provides that "[t]he applicant for a reduction in an assessment on the local roll shall establish the full value of the property by independent evidence." In our view, as part of their burden of proof, Taxpayers must show that the assessor's use of the band-of-investments method was arbitrary, in excess of discretion, or in violation of standards prescribed by law.[14]

B. *Taxpayers Failed to Carry Their Burden of Proving the Assessor Arbitrarily Used the Band-of-Investments Method for Deriving the Applicable Capitalization Rate*

Real Property Tax Rules, rule 8 (Cal. Code Regs., tit. 18, § 8, hereafter rule 8) governs the use of the income approach to value. Subdivision (g) of rule 8 provides: "The capitalization rate may be developed by either of two means: [¶] (1) By comparing the net incomes that could reasonably have been anticipated from recently sold comparable properties with their sales prices, adjusted, if necessary, to cash equivalents (the market-derived rate). This method of deriving a capitalization rate is preferred when the required sales prices and incomes are available. . . . [¶] (2) By deriving a weighted average of the capitalization rates for debt and for equity capital appropriate to the California money markets (the band-of-investment method) and adding increments for expenses that are excluded from outgo because they are based on the value that is being sought or the income that is being capitalized. . . ."

With respect to the use of comparable properties, section 402.5 provides: "When valuing property by comparison with sales of other properties, in

---

[14]The City devotes a considerable portion of its brief arguing that substantial evidence supports the AAB's finding that Taxpayers failed to establish a prima facie case regarding their valuation of the properties at issue. According to the City, when a taxpayer fails to establish a prima facie case, the assessor's value remains undisturbed and the assessor need not even present a case. This is merely a different way of stating that the assessor's valuation is presumed correct, and it is the taxpayer's burden to overcome the presumption. (*Shubat* v. *Sutter County Assessment Appeals Bd.*, *supra*, 13 Cal.App.4th at p. 806.) The cases cited by the City do not, as the City suggests, establish yet another hurdle for the taxpayer in the form of establishing a prima facie case. Moreover, the AAB never made a finding that Taxpayers failed to establish a prima facie case. Rather, the AAB found that Taxpayers had failed to carry their burden of proof.

order to be considered comparable, the sales shall be sufficiently near in time to the valuation date, and the properties sold shall be located sufficiently near the property being valued, and shall be sufficiently alike in respect to character, size, situation, usability, zoning or other legal restriction as to use unless rebutted pursuant to Section 402.1, to make it clear that the properties sold and the properties being valued are comparable in value and that the cash equivalent price realized for the properties sold may fairly be considered as shedding light on the value of the property being valued. 'Near in time to the valuation date' does not include any sale more than 90 days after the lien date."

Section 402.5 makes clear that it is not enough for a taxpayer merely to claim that the properties used for comparison are comparable to the property being valued. Rather, the properties must have characteristics that give some assurance that the properties are relevant to the analysis. The AAB concluded that "[w]ith respect to [Taxpayers'] income approach to value, the facts do not support the [Taxpayers'] capitalization rate. The subject property was rent subsidized by the federal government. The [Taxpayers'] use of capitalization rates for unsubsidized, unrestricted properties will yield a higher capitalization rate and hence a lower property valuation. The proper approach would be to use a capitalization rate for rent-subsidized property."

Taxpayers contend the AAB erred because they presented uncontested evidence of sales of appropriate comparable properties. They contend even the county assessor acknowledged the validity of their evidence. Taxpayers apparently are referring to evidence they presented regarding four properties located in Santa Clara, Rancho Cordova, San Diego, and Santa Rosa. We note that Taxpayers' counsel stated at the hearing before the AAB that he knew of at least 50 comparable sales, but the record does not contain further evidence of those purported sales.

The issue here, however, is not whether Taxpayers presented evidence supportive of using the comparable sales method, but rather, whether the assessor's choice of the band-of-investments method was arbitrary. The record shows the assessor in fact had significant concerns regarding the reliability of Taxpayers' comparable properties. These concerns ranged from the small number and distant location of the comparables to the wide deviation between the capitalization rates for the individual comparables.

Thus, the assessor's choice of the band-of-investments method does not appear to be arbitrary.[15]

More important, even assuming that Taxpayers' comparables were sufficiently reliable, rule 8, subdivision (g) (Cal. Code Regs., tit. 18, § 8, subd. (g)) only states that the comparable sales method is *preferred*. It does not *mandate* use of that method. In this regard, Taxpayers have not cited any evidence demonstrating that use of the band-of-investments method was otherwise improper.

C. *The Assessor's Determination of Valuation Should Be Upheld*

Taxpayers contend the assessor's valuation was flawed in two respects. First, Taxpayers contend that in valuing the subject properties the assessor erred by not discounting assumed mortgages to their cash equivalents. Second, Taxpayers contend the assessor erred in determining the applicable capitalization rate. Neither contention has merit.

Taxpayers cite in support of their first contention Real Property Tax Rules, rule 4 (Cal. Code Regs., tit. 18, § 4, hereafter rule 4) and *Prudential Ins. Co.* v. *City and County of San Francisco* (1987) 191 Cal.App.3d 1142 [236 Cal.Rptr. 869]. Rule 4 provides, in pertinent part: "In using sales prices of the appraisal subject or of comparable properties to value a property, the assessor shall: [¶] . . . [¶] (b) When appraising an unencumbered-fee interest, (1) convert the sale price of a property encumbered with a debt to which the property remained subject to its unencumbered-fee price equivalent by adding to the sale price of the seller's equity the price for which it is estimated that such debt could have been sold under value-indicative conditions at the time the sale price was negotiated . . . ." In *Prudential Ins. Co.* v. *City & County of San Francisco*, the court held that rule 4 is mandatory in nature, that the assessor thus erred by failing to take this step and, therefore, the assessment was in violation of the standards prescribed by state law. (191 Cal.App.3d at pp. 1148-1156.)

Here, it is undisputed that the assessor did not adjust the outstanding loans on Taxpayers' properties to their cash equivalents. He was not required to do

---

[15]Taxpayers attempt to minimize the effect of the location of their comparables by citing *Midstate Theatres, Inc.* v. *County of Stanislaus* (1976) 55 Cal.App.3d 864 [128 Cal.Rptr. 54], in which the court upheld the assessor's use of four comparables all located thirty-five miles away from the subject property. (*Id.* at p. 880 ["Even relatively poor data can 'fairly be considered as shedding light on the value of the property being valued'. . . if it is the best or only data available." (Citation omitted.)].) Here, Taxpayers rely on comparables not just 35 miles away, but hundreds of miles away. We agree with the City that there is a qualitative difference in the comparability of properties 35 miles apart and the comparability of properties hundreds of miles apart.

so, however, because he was using the band-of-investments method of valuation, not the comparable sales method advocated by Taxpayers. Application of the band-of-investments method is governed by rule 8 (Cal. Code Regs., tit. 18, § 8) which does not require discounting of mortgages to cash equivalents.

As to Taxpayers' second contention, their argument appears to be as follows: By statute, the interest subsidies Taxpayers receive from HUD may not be counted as part of the income streams of their properties (the numerator of the capitalization rate fraction). (See § 402.9.) The income streams for Taxpayers' properties are thus limited to the restricted rent they can charge, which represents that amount which serves to amortize their debt at a 1 percent interest rate, plus reasonable operating expenses. Since their income streams are thus restricted, the values of their properties (the denominator of the capitalization rate fraction) should include the values of their mortgages only up to the amounts for which they are responsible.

This argument is also easily disposed of. Taxpayers' argument again assumes use of the comparable sales method of deriving the capitalization rate. We have already concluded, however, that the assessor properly used the band-of-investments method to calculate the applicable capitalization rate. As we explained previously, under this method, the capitalization rate is derived by using a weighted average of the debt and equity for comparable properties. The inclusion or exclusion of interest subsidies and the proper valuation of mortgages is entirely irrelevant to this method.

V. *Attorney Fees*

Finally, Taxpayers contend they are entitled to attorney fees under section 5152 and Government Code section 800. The trial court, denying any relief for Taxpayers, also denied their claim for attorney fees. In light of our partial reversal, we remand this matter to the trial court for a determination as to whether Taxpayers are entitled to attorney fees under Government Code section 800.

Government Code section 800 provides: "In any civil action to appeal or review the award, finding, or other determination of any administrative proceeding under this code or under any other provision of state law, except actions resulting from actions of the State Board of Control, where it is shown that the award, finding, or other determination of the proceeding was the result of arbitrary or capricious action or conduct by a public entity or an officer thereof in his or her official capacity, the complainant if he or she prevails in the civil action may collect reasonable attorney's fees . . . in addition to any other relief granted or other costs awarded."

" ' "The award of attorney's fees under Government Code section 800 is allowed only if the actions of a public entity or official were wholly arbitrary or capricious. The phrase 'arbitrary or capricious' encompasses conduct not supported by a fair or substantial reason, a stubborn insistence on following unauthorized conduct, or a bad faith legal dispute." . . . Attorney's fees may not be awarded simply because the administrative entity or official's action was erroneous, even if it was "clearly erroneous." . . .' . . ." (*American President Lines, Ltd.* v. *Zolin* (1995) 38 Cal.App.4th 910, 934 [45 Cal.Rptr.2d 370], citations omitted.) Because the decision under Government Code section 800 is essentially one of fact within the sound discretion of the trial court, we remand this matter to the trial court for further proceedings on this issue.

Section 5152, also cited by Taxpayers, provides: "In an action in which the recovery of taxes is allowed by the court, if the court finds that the void assessment or void portion of the assessment was made in violation of a specific provision of the Constitution of the State of California, of this division, or of a rule or regulation of the board, and the assessor should have followed the procedures set forth in Section 538 in lieu of making the assessment, the plaintiff shall be entitled to reasonable attorney's fees as costs in addition to the other allowable costs." By its own terms, section 5152 only applies where the assessor should have utilized the procedures set forth under section 538. Since the error supporting our partial reversal was the AAB's, we conclude section 5152 is inapplicable, and, therefore, that Taxpayers are not entitled to fees under that section.

DISPOSITION

The judgment is affirmed in part (with respect to tax years 1982-1983 through 1984-1985 and 1987-1988), reversed in part (with respect to tax years 1985-1986 and 1986-1987), and the matter remanded to the trial court for further proceedings consistent with the views expressed in this opinion. Costs to appellants.

Peterson, P. J., and Haning, J., concurred.

A petition for a rehearing was denied December 12, 1997, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied March 11, 1998. Kennard, J., was of the opinion that the petition should be granted.